SARAH REBECCA PATTERSON BURTON, Widow, and Next Friend of WALTER PATTERSON BURTON, Minor Son, and BRUCE LEE BURTON, Minor Son of BOBBIE LUCIAN BURTON, Deceased, Employee, v. PETER W. BLUM & SON, Employer, TRAVELERS INSURANCE CO., Carrier.

(Filed 20 June, 1967.)

**1. Master and Servant § 67—**

When the death of the employee occurs more than two years after the accident, the award of compensation for the death is authorized only if there is evidence to support a finding that from the date of the accident to the time of death the employee had a continuing incapacity because of the injury to earn the wages which he was receiving at the time of the accident. G.S. 97-38.

**2. Same—**

Disability as used in the Workmen's Compensation Act means incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment, G.S. 97-2(9), and therefore "disability" as used in the Act refers not to physical injury but to diminished capacity to earn money, and such definition must be read into G.S. 97-38.

**3. Same—**

Where the parties stipulate that after the injury the injured employee worked for the same employer, in one instance for over thirteen months and in another instance for over five months, at his regular wages, such stipulation precludes a finding by the Commission that the employee's total disability continued without interruption from the date of the accident.

**4. Master and Servant § 93—**

When all the evidence and inferences to be drawn therefrom permit but a single conclusion, liability under the Workmen's Compensation Act is a question of law subject to review.

APPEAL by defendants from *Gambill, J.,* at the 26 September 1966 Civil Session of FORSYTH.

The defendants appeal from a judgment affirming an award by the North Carolina Industrial Commission under the Workmen's Compensation Act on account of the death of Bobbie Lucian Burton, husband and father of the plaintiffs.

It was stipulated before the Commission that:

The deceased was an employee of Peter W. Blum & Son at the regular wage rate of $90.00 per week on 20 June 1960, when he sustained injuries by an accident arising out of and in the course of his employment. While at work on that date, he fell from the roof of a two story building and sustained a severe fracture of the right hip and multiple fractures in the pelvic region.

The defendants, who are the employer and the employer's insurance carrier under the Workmen's Compensation Act, entered into an agreement with Burton, which was approved by the Industrial Commission on 15 July 1960, whereby they agreed to pay him compensation for total disability as the result of this accident. Compensation was so paid until 28 December 1960, on which date Burton returned to work for the same employer at the same wage rate, $90.00 per week. On 31 January 1961, Burton, the employer and the insurance carrier entered into a further agreement, approved by the Industrial Commission, for the payment to Burton of compensation for 139½ weeks on account of permanent partial disability of his right hand and right leg as the result of the injuries sustained on 20 June 1960. Compensation for this partial permanent disability was paid, in accordance with this agreement, from Burton's return to work on 28 December 1960 to his death on 16 December 1962.

Burton worked regularly in the same employment from his return to it on 28 December 1960 through the week ending 14 April 1962. He was absent from work, due to total disability, for the next four weeks. He then returned to work at the same wage and continued to work regularly through the week ending 20 October 1962.

He did not work the next two weeks due to total disability. He returned to work on 5 November 1962 and worked regularly at the same wage through 8 December 1962. From then until his death on 16 December 1962, he was totally disabled.

Burton consulted his physician at the latter's office six times during the year 1961, and twice in February, three times in March, four times in April, three times in May, once in July, once in October and once in December 1962. He was hospitalized once in April, twice in October and once in December 1962, his death occurring during the last of these confinements in the hospital.

The Industrial Commission found as facts, among other findings of fact, that Burton's death "resulted approximately from the injury by accident arising out of and in the course of his employment with defendant employer on June 20, 1960; that such injury by accident was the proximate cause, that is, an operating and efficient cause, without which death would not have occurred"; and that "the death of the deceased employee occurred more than two years and within six years after said injury by accident while total disability still continued." The Commission accordingly issued its award directing that the defendants pay compensation to the widow for the use of herself and of her two minor children, on account of the death of Burton, in the amount and for the period prescribed in the Workmen's Compensation Act.

Testimony by the widow was to the effect that Burton was in good health prior to the accident on 20 June 1960, but "never spent a well day after that." She testified:

> "He had phlebitis off and on and he couldn't go to church like he wanted to and sit there long on account of that leg, swells, being bruised all on the inside. * * * He had to take drugs the whole time to keep himself going what little he did do. And he couldn't rest at night like he ought to and had to keep his leg up on a pillow to elevate it at times. These complaints that I have told you about continued from the date of his fall on June 20 up to his death in December of 1962."

Medical testimony was to the effect that:

In 1961, Burton consulted his regular, personal physician for pain in his legs, swelling, difficulty in walking, pain in his hip and pain in the lower abdomen. During his original hospitalization as the result of his fall, he developed a pulmonary embolism from thrombosis of the deep pelvic veins. At the times that he consulted his physician in 1961, he was still showing evidence of the thrombophlebitis and of vascular insufficiency.

When the abdominal pains continued and became more persistent in April 1962, his physician and a surgeon, then called in for consultation, advised an exploratory laparotomy, thinking they would find acute appendicitis. The operation was performed and the appendix removed but "the pathology did not bear out acute appendicitis." He continued to have pain but not so much as prior to the operation.

In October 1962, the abdominal pain again became severe. He was again hospitalized for observation. Adhesions and gall bladder disease were considered as possible explanations of the pain, but it was determined to observe him further prior to additional surgery. On 10 December 1962, he was readmitted to the hospital with severe abdominal pain. An extensive exploratory abdominal operation was performed by a different surgeon on 12 December 1962. The omentum was removed, having been found considerably swollen, and certain adhesions were corrected, but the suspected difficulties were not discovered and the cause of the pain was not determined. For two days he appeared to be progressing normally but suddenly developed kidney failure and died two days later. The immediate cause of death was uremia due to acute kidney failure. No evidence of kidney disorder was observed prior to two days before the death.

The physician and the surgeon who performed the final operation each testified that in his opinion the injury by the fall on 20 June 1960 could have been the cause of the death. However, each testified in effect that this was speculation and something which he could not prove. Neither expressed any opinion as to the cause of the kidney failure or as to the cause of the acute abdominal pain. The surgeon testified, "The breakdown which this man suffered during the past, the last several hours of his life, partciularly the last day to two days, apparently came as a complete surprise."

At the time of the hospitalization following the fall on 20 June 1960, it was first suspected that there was "possible bladder" damage but no evidence of such injury was then discovered. The final report of the then attending physician to the Industrial Commission, dated 17 January 1961, evaluated the permanent partial disability of the right leg and of the right hand, and stated, "No further medical care is indicated," and that Burton had "returned to work on 12-28-60."

*W. Scott Buck for defendants.*
*Martin and Martin for plaintiff.*

LAKE, J. The Workmen's Compensation Act authorizes the Industrial Commission to make an award of compensation on account

of the death of an employee only in the event that "death results approximately from the accident and within two years thereafter, or while total disability still continues and within six years after the accident." G.S. 97-38. The accident which the Commission found to be the proximate cause of the death occurred 20 June 1960. The death occurred 16 December 1962. The award of compensation was, therefore, authorized only if the employee's "total disability" resulting from the fall still continued at the time of death. It is not sufficient that death occurred while the employee was totally disabled, even though his then disability was the result of the accident. The statute, by its express terms, makes a continuing total disability from the time of the accident to the time of the death a condition precedent to the making of an award of death benefits where, as here, the death occurred more than two years after the accident.

The Act defines disability as follows: "The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment." G.S. 97-2(9). This definition must be read into G.S. 97-38 in lieu of the word "disability." Thus, an award of compensation, on account of a death occurring more than two years after the accident, is authorized only if there is evidence to support a finding that, from the accident to the death, the employee had a continuing incapacity, because of the injury, to earn the wages which he was receiving at the time of his accident. "Under the Workmen's Compensation Act *disability* refers not to physical infirmity but to a diminished capacity to earn money." *Hall v. Chevrolet Co.*, 263 N.C. 569, 139 S.E. 2d 857. *Accord: Dail v. Kellex Corp.*, 233 N.C. 446, 64 S.E. 2d 438; *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265.

The award in the present instance cannot be sustained on the basis of testimony by the widow that the deceased employee "never spent a well day" after his accident and suffered pain and discomfort throughout the time when he was back at work. In *Branham v. Panel Co.*, 223 N.C. 233, 25 S.E. 2d 865, Barnhill, J.. later C.J., speaking for the Court, said:

> "The statute provides no compensation for physical pain or discomfort. It is limited to the loss of ability to earn. * * * However urgently he [the claimant employee] may insist that he is 'not able to earn' his wages, the fact remains that he is receiving now the same wages he earned before his injury. That fact cannot be overcome by any amount of argument. * * * There is no 'disability' if the employee is receiving the same wages in the same or any other employment. That 'in the same'

employment he is not required to perform all the physical work thereofore required of him can make no difference."

In the present case, it is stipulated that from 28 December 1960 to 21 April 1962 the deceased employee worked regularly for the same employer at the same wage for which he worked prior to the accident, and again worked for the same employer at the same wage from 14 May 1962 to 27 October 1962. In the face of this stipulation, the Commission's further finding and conclusion that this employee's "total disability" continued from the accident to his death more than two years later cannot be sustained.

Although a finding of fact by the Industrial Commission which is supported by some competent evidence is binding upon the superior court and upon this Court on an appeal, *Osborne v. Ice Co.*, 249 N.C. 387, 106 S.E. 2d 573, "when all the evidence and the inferences to be drawn therefrom result in only one conclusion, liability is a question of law subject to review." *Hensley v. Cooperative*, 246 N.C. 274, 98 S.E. 2d 289; *Dependents of Poole v. Sigmon*, 202 N.C. 172, 162 S.E. 198.

The award being beyond the authority of the Commission for the above reasons, it is unnecessary for us to determine whether there was sufficient evidence to support the Commission's finding of fact that the accident on 20 June 1960 was the proximate cause of the death, or to determine the competency of the expert testimony upon that question which was admitted over objection by the defendants.

Reversed.