ROBERT B. ASHLEY, Employee, v. RENT-A-CAR COMPANY, INC., Employer AND COSMOPOLITAN INSURANCE COMPANY, Carrier.

(Filed 24 July, 1967.)

**1. Master and Servant § 67—**

Disability as used in the Workmen's Compensation Act refers not to physical infirmity but to a diminished capacity to earn money, and while the employee's return to work after the injury and the fact that the same wages are paid him after the injury as before create a presumption of termination of disability, such presumption is a presumption of fact and rebuttable. G.S. 97-2(9).

**2. Master and Servant § 73—**

Medical and hospital expenses and the cost of nursing services are not a part of, and are not included in, compensation recoverable under the Workmen's Compensation Act.

**3. Same—**

The provision of G.S. 97-25 that the employer should be liable for medical and nursing services for such time as such services will tend to lessen the period of disability, *held* not to preclude such payments when the disability is permanent, provided such services will tend to lessen the degree of disability.

**4. Same—**

Claimant was severely burned in a compensable accident. The employer continued to pay full wages after the accident and claimant gradually resumed his managerial duties as his total disability lessened. There was expert testimony that although claimant's disability was permanent, further operations would lessen the degree of disability by enabling claimant to grasp objects with his left hand, and to raise and lower his head, etc. *Held:* The employer and his insurance carrier may be held liable for such operations. G.S. 97-25.

**5. Same—**

Evidence tending to show that after compensable injury, claimant was totally incapacitated even after his release from the hospital, that he received nursing care at his home subsequent to his release from the hospital, and that his condition improved during the period of such nursing care, *held* to support award of compensation for such care as tending to lessen the degree of claimant's disability.

˙ ˙ APPEAL by defendants from *McKinnon, J.,* October 1966 Civil Session of DURHAM.

Claim under Workmen's Compensation Act for unpaid medical expenses and for payment for proposed future surgical procedures.

On 7 January 1963 plaintiff was severely burned in an accident compensable under the Workmen's Compensation Act, and the resulting injuries caused him to be hospitalized from that date until 12 June 1963, and further caused him to be confined at home under care of a private nurse for the greater part of the time until May 1965. During his hospitalization plaintiff required extensive surgery, and after his discharge in June 1963 he required further surgery to remove cataracts and to amputate a finger on his right hand. Plaintiff has been paid his full salary regularly since the accident, and after his return from the hospital he resumed his managerial and supervisory duties with defendant employer progressively as his health improved. This work was conducted by plaintiff from his home.

Defendants paid all medical expenses incurred during the time plaintiff was hospitalized, and since 12 June 1963 they have paid $10,657.28 in additional medical expenses. Approximately $2,500 in medical expenses incurred by plaintiff after 12 June 1963 have not been paid by defendants.

Plaintiff filed request for hearing before the Industrial Commission to obtain payment of these unpaid medical expenses and, further, to fix defendants' liability for future medical expenses anticipated by plaintiff. Defendants filed motion before the Commission alleging that through error they had overpaid for medical expenses the sum of $10,657.28, and moved that this amount be allowed as a set-off against any compensation the Commission should find defendants owed the plaintiff.

Plaintiff testified and offered the testimony of Dr. Lewis McKee, Dr. Arthur B. Bradsher, Dr. Leonard Goldner and Mr. Eugene Allen. Defendants offered no evidence. The hearing Commissioner entered findings of fact and conclusions of law as follows:

### FINDINGS OF FACT.

"1. That claimant, Robert B. Ashley, is 57 years old and on the date of the accident giving rise to this claim was employed by the defendant employer herein as manager of the Durham office; that his duties were entirely supervisory in nature and involved no manual labor. ·

"2. That on January 7, 1963, claimant was injured in a fire while at work and was immediately hospitalized with second

and third degree burns over approximately 65 percent of his body surface; that his eyes showed evidence of flash burns and at that time his eyelids were swollen shut; that he was unconscious and semi-conscious for approximately three months following his injury and was in the hospital continuously from the date of his injury to June 12, 1963; that he has been hospitalized on four occasions since his original hospitalization.

"3. That upon his release from the hospital on June 12, 1963, claimant was unable to even write his name; that private duty nurses were required from that date to May 1, 1965 as a result of his injury; that during this period of time by reason of his multiple burns and resultant scarring claimant had to have assistance in eating, brushing his teeth, combing his hair, dressing himself, and care for his general condition; that said nursing care was reasonably necessary and tended to lessen his period of disability.

"4. That at the time of his release from the hospital on June 13, 1963, claimant began to resume part of his former supervisory duties with the employer; that he has not maintained regular office hours, but since that date has made decisions and suggestions to the other employees covering the operation of the business, mostly by telephone from his home; that he has negotiated for purchase of new automobiles and obtained insurance coverage on them for his employer from his home; that he has done no physical labor since his injury, has not been able to do so, and will probably never be able to again engage in manual labor.

"5. That following his accident claimant developed posterior capsulor cataracts on each eye as a result of his injury; that he had no cataracts and no trouble with his eyes prior to his burns; that by October 22, 1963, his vision had deteriorated by reason of said cataracts to 20/100 in the right eye and 20/70 in the left eye; that Dr. George S. Meyer performed surgery and removed the cataracts and restored his vision to its former state of efficiency, the first of such cataract operations being performed in May of 1964; that said cataract operations were occasioned by his injury. That said operations tended to lessen his period of disability. .

"6. That Dr. Arthur Bradsher now estimates claimant as having 100 percent permanent loss of his right hand and 90 per-

cent permanent loss of use of his left arm as a result of his injury.

"7. That there are very few square inches of normal skin left on claimant's body unaffected by either scarring or skin grafts; that he is unable now to look up or hold his head back due to restriction of neck and head motion by scar tissue on his anterior neck; that claimant has developed an area of scarring in the left axilla area where the arm joins the anterior chest which severely restricts movement of this arm outward and away from the body; that claimant's left hand is left in such fashion at this time that he is unable to grasp objects with it; that operative procedures by orthopedists and plastic surgeons to claimant's neck, left axilla and left hand would improve his general condition; that plastic repair of the neck contracture would permit him to raise his head and give him greater range of motion with movements of his head; that repair of the left axilla contracture would permit claimant to have greater range of motion of his left arm and hand and give him greater use of this member of his body; that operative procedures to claimant's left hand and the fingers thereon would decrease the permanent disability therein and permit him to use the hand to greater efficiency; that with such operative procedures to claimant's hand he could again grasp objects. That he is not able to do this at this time.

"8. That the operative procedures recommended by Dr. McKee and plaintiff's other physicians will tend to lessen claimant's period of disability and must be provided by the defendants.

"9. That claimant has not yet reached maximum improvement; that claimant's permanent partial disability and/or disfigurement resulting from his injury is not yet ready to be rated and will not be ready for final rating until the operative procedures recommended have been carried out."

CONCLUSIONS OF LAW.

"1. That the operative procedures now recommended by claimant's physicians will tend to lessen his period of disability and therefore must be provided by defendants. G.S. 97-25, G.S. 97-31.

"2. That the nursing care rendered claimant from the date of his injury to May 1, 1965, was reasonably necessary by rea-

son of his injury and resultant conditions and the cost of same must be provided by defendants. G.S. 97-25.

"3. That claimant's cataracts described in Finding of Fact #5 resulted naturally and unavoidably from claimant's injury and the operations for correction of same must be provided by defendants. G.S. 97-2(6), G.S. 97-25. Defendants contend the operative procedures now recommended by claimant's physicians will not "tend to lessen the period of disability," although they admit such procedures will probably reduce to some extent the amount of permanent partial disability. This position cannot be sustained. G.S. 97-31 states compensation shall be paid during the healing period and "shall be deemed to continue for the periods specified." The hand operative procedures therefore will lessen the "period" of disability if they reduce the percentage of permanent loss and the neck and axilla surgery will enable him to better perform his work. The case of *Millwood v. Cotton Mills*, 215 N.C. 519 is factually distinguishable. In that case claimant was incurably totally and permanently disabled and the "treatment" sought was not calculated to reduce her permanent disability."

Based upon the foregoing findings and conclusions, the Hearing Commissioner entered the following award:

"1. Defendants shall pay all medical, hospital, nursing, and other treatment expenses incurred by claimant on account of his injury, including but not limited to the bills incurred in connection with the claimant's cataract operations and his nursing care to May 1, 1965, when bills for same have been submitted to and approved by the Industrial Commission.

"2. Defendants shall provide the additional operative procedures and other treatment recommended by his physicians to improve the present condition of his neck, left axilla and left hand. After said procedures have been performed and claimant has attained maximum improvement, this case shall be reset for hearing in Durham upon the request of any of the parties, in the event the amount of compensation due for permanent partial disability and/or disfigurement cannot be agreed upon.

"3. Defendants shall pay all costs incurred, including an expert witness fee in the sum of $75.00 to Dr. Arthur Bradsher, Windsor; which shall include his mileage; $25.00 each to Dr. George S. Meyer, Dr. J. Leonard Goldner, and Dr. Lewis M. McKee, Durham, North Carolina.

"4. Approval of counsel fee for claimant's counsel is deferred pending final award herein."

Defendants excepted to the findings of fact, conclusions of law, and award entered by the Hearing Commissioner and appealed to the Full Commission. The Full Commission overruled defendants' exceptions and adopted the findings of fact, conclusions of law and award of the hearing Commissioner. From judgment entered by the Full Commission, defendants appealed to the Superior Court. The trial judge entered judgment overruling each of defendants' exceptions and affirming the opinion and award of the Industrial Commission. Defendants appealed.

*Hofler, Mount & White and Richard M. Hutson for plaintiff.*
*Spears, Spears & Barnes for defendants.*

BRANCH, J. Defendants contend there is not sufficient competent evidence to support the findings of fact and to justify the conclusions of law that the operative procedures now recommended by claimant's physicians or that the nursing and medical care received by claimant after 12 June 1963 tend to lessen claimant's period of disability so as to impose liability for the payment thereof on defendants.

G.S. 97-25 provides, *inter alia:* "Medical, surgical, hospital, nursing services, medicines, sick travel, and other treatment including medical and surgical supplies as may reasonably be required, for a period not exceeding ten weeks from date of injury to effect a cure or give relief *and for such additional time as in the judgment of the Commission will tend to lessen the period of disability,* . . . shall be provided by the employer. . . ." (Emphasis ours.)

G.S. 97-2(9) provides: "The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."

Defendants first argue there is no disability under the workmen's compensation statute since plaintiff is receiving the same wages he received before his injury. In support of this contention, they cite and rely on *Branham v. Panel Co.*, 223 N.C. 233, 25 S.E. 2d 865, where claimant suffered an injury in the course of his employment which resulted in a permanent partial disability in the use of his back. He lost no compensable time from work, but was unable to do the same physical work because of his injury. His employer assigned

him to other duties at the same wage. All medical bills, except those of Duke Hospital and for dental services, had been paid by employer or the insurance carrier. Upon hearing plaintiff's claim, the Industrial Commission, *inter alia,* ordered that the defendants pay to the proper parties "the reasonable medical, surgical and hospital costs of treatments rendered the claimant at Duke Hospital and for payment of dental bills incurred as a result of his injury by accident, after bills have been submitted to and approved by the Commission." It found that plaintiff had lost no wages and therefore denied compensation, but retained jurisdiction in the event his injuries should diminish his wages within 300 weeks from the date of the accident. Plaintiff appealed. Affirming the conclusions and award of the Industrial Commission, this Court stated:

> "The statute provides no compensation for physical pain or discomfort. It is limited to the loss of ability to earn. 'The loss of his capacity to earn . . . is the basis upon which his compensation must be based.' . . . 'The term "disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' . . . In short, under our Act, wages earned, or the capacity to earn wages, is the test of earning capacity, or, to state it differently, the diminution of the power or capacity to earn is the measure of compensability. . . . However urgently he may insist that he is 'not able to earn' his wages, the fact remains that he is receiving now the same wages he earned before his injury. That fact cannot be overcome by any amount of argument. It stands as an unassailable answer to any suggestion that he has suffered any loss of wages within the meaning of the Act."

*Branham v. Panel Company, supra,* is readily distinguishable from the instant case, in that *Branham* dealt with *compensation* for disability, dependent as to amount upon whether the injury produced a permanent total, a permanent partial, a total temporary, or a partial temporary incapacity to earn wages. The Court was applying the rule in *Branham* to determine the actual difference between wages earned prior to the injury and wages earned after the injury. It is conceded that in some cases growing out of G.S. 97-30 it becomes necessary to apply this rule in order to determine the amount of *compensation due.* However, this would not be applicable to medical, surgical, hospital, and nursing services under G.S. 97-25, as medical and hospital expenses are not a part of and are not included in determining recoverable compensation. *Whitted v. Palmer-Bee Co.,*

228 N.C. 447, 46 S.E. 2d 109; *Morris v. Chevrolet Co.,* 217 N.C. 428, 8 S.E. 2d 484; *Hedgepeth v. Casualty Co.,* 209 N.C. 45, 182 S.E. 704; *Hoover v. Indemnity Co.,* 202 N.C. 655, 163 S.E. 758. We note that in *Branham* the Court approved the allowance of all medical bills without any reference to whether they were incurred within the 10-week period from the date of injury, or whether they tended to "lessen the period of disability." Further, in *Branham* the Commission found that the employee *was* partially disabled and awarded compensation for 300 weeks, less such time as he was paid full wages. It also found that he had been paid full wages *in lieu* of compensation. Therefore, under those facts the Court held that he could not receive compensation in addition to full wages and medical expenses. The determination of disability was not before the Court, and its comment concerning the definition of "disability" was mere *dictum.*

In *Hill v. DuBose,* 234 N.C. 446, 67 S.E. 2d 371, the Court considered a compensation case in which the award for partial permanent disability was based upon a finding as to the amount the claimant had earned since the date on which the total permanent disability had ceased, rather than upon his capacity or ability to earn. Holding this to be error, the Court, speaking through Chief Justice Devin, said:

> ". . . 'The disability of an employee because of an injury is to be measured by his capacity or incapacity to earn the wages he was receiving at the time of the injury. *Branham v. Panel Co.,* 223 N.C. 233, 25 S.E. 2d 865; *Anderson v. Motor Co., ante,* p. 372 (233 N.C. 372, 64 S.E. 2d 265). Loss of earning capacity is the criterion.' *Compensation must be based upon loss of wage-earning power rather than the amount actually received.* It was intended by the statute to provide compensation only for loss of earning capacity. Hence, the finding that claimant had earned $7 per week for the period from 25 November, 1949, to 18 July, 1950, was not the proper basis for determining the award under the statute." (Emphasis ours) Accord: *Evans v. Times Co.,* 246 N.C. 669, 100 S.E. 2d 75.

Here, the Court made *capacity* to earn the same wages, and not the particular employer's policy or willingness to pay wages for an undetermined time, the test of disability.

In the instant case it would indeed be harsh to deprive claimant of medical expenses otherwise due him on the theory that his capacity to earn wages was not diminished because his employer saw fit, from motives of generosity or otherwise, to continue to pay the

same wages after his injury. It would strain credulity to hold that an employee who was in a semi-conscious condition for ten weeks after an injury, or confined to the hospital in a cast, was not disabled. A fortiorari the act of his employer in paying his wages in full from the date of the injury should not be determinative of the employee's disability and thereby relieve the employer or insurance carrier from liability for hospital and medical care designed to improve his capacity to earn wages. It would be unconscionable to hold that a man who had been so severely burned and disfigured that he is unable to hold a pencil, pick up a water glass, or lift his arm high enough to comb his hair, has not suffered any diminished capacity to earn wages simply because his employer, for an indeterminate period of time, continues to pay claimant the same wages he received before the injury. The rule adopted by the majority of the decisions since *Branham v. Panel Co., supra,* is: Under the Workmen's Compensation Act disability refers not to physical infirmity but to a diminished capacity to earn money. *Anderson v. Motor Co.,* 233 N.C. 372, 64 S.E. 2d 265; *Dail v. Kellex Corp.,* 233 N.C. 446, 64 S.E. 2d 438; *Hill v. DuBose, supra; Watts v. Brewer,* 243 N.C. 422, 90 S.E. 2d 764; *Barnhardt v. Cab Co.,* 266 N.C. 419, 146 S.E. 2d 479.

The *Branham* case was last cited in *Burton v. Blum & Son,* 270 N.C. 695. However, the *Burton* case is distinguishable from the instant case in that the claimant sought to recover on the basis of continuing "total disability" from the date of the accident to the date of intestate's death, a period of approximately thirty months. The evidence showed actual employment and payment of wages during the period which completely refuted continuing total disability. In the instant case we have a claim for medical expenses which is not based on continuing total disability.

This Court said in *Pratt v. Upholstery Co.,* 252 N.C. 716, 115 S.E. 2d 27:

> "It is true that there is a presumption that disability ends when the employee returns to work. *Tucker v. Lowdermilk,* 233 N.C. 185, 63 S.E. 2d 109. But this is a presumption of fact and not of law. This Court has held that a rebuttable presumption may not under certain circumstances be weighed against the evidence."

Receipt of the same wages after injury should create no stronger presumption than the presumption which arises on an employee's returning to work. In both instances a rebuttable presumption of fact arises. *In re Will of Wall,* 223 N.C. 591, 27 S.E. 2d 728. See Annotations: 149 A.L.R. 413 and 118 A.L.R. 731.

Certainly the amount of wages received by the employee after his injury should be strong evidence of his capacity or incapacity to earn wages, but under the conditions here disclosed receipt of wages in the amount received before the injury cannot be conclusive proof that no "disability" exists. How long will employer continue to employ claimant if his condition remains unchanged? What would become of claimant if employer should not continue his business? Must claimant continue to be employed by the same employer against his will in order to receive payment of compensation or medical expenses?

In support of their position, defendants further contend that there is not sufficient evidence to support the finding that treatment will tend to lessen the period of disability. In this connection defendants rely on the case of *Millwood v. Cotton Mills*, 215 N.C. 519, 2 S.E. 2d 560, where an employee developed dementia praecox after hospitalization resulting from an accident in the course of her employment. The evidence revealed her condition to be incurable, requiring her to be confined to an institution for the remainder of her life. The Court held there was not sufficient evidence to sustain an award of additional medical attention, since there was "no evidence that treatment would tend to lessen the period of her disability."

The facts in the instant case differ in that here, not only may claimant's condition be improved and disability lessened, but there is competent medical evidence that treatment will tend to lessen the *period* of disability. Dr. Arthur B. Bradsher, a medical expert in the field of neurosurgery, *inter alia*, testified: "Operative procedures performed upon his right hand tended to lessen his period of disability. . . . I would hazard an estimate that further operative procedures on Mr. Ashley's left arm would tend to lessen his period of disability on this arm, but improvement would be limited. . . . He has improved in the fifteen months that I have seen him, partially because of medical treatment and operative procedures."

Dr. Lewis McKee, plaintiff's family physician, testified: "In my opinion, if Mr. Ashley has corrective Orthopedic and plastic surgery, it will lessen his disability. . . . Mr. Ashley is permanently disabled at the present time. Corrective surgery would lessen the period of his disability."

It would appear from the medical testimony that the treatment proposed for claimant and the treatment rendered was such that it would tend to increase claimant's capacity to work.

G.S. 97-30 in part provides: "Except as otherwise provided in § 97-31, where the incapacity for work resulting from the

injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such disability, a weekly compensation equal to 60 per centum of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than thirty-seven dollars and fifty cents ($37.50) a week, and in no case shall the period covered by such compensation be greater than three hundred weeks from the date of injury. . . ."

Under this statute compensation for permanent partial disability is measured by the degree of disability, except in case of loss of a member as specified in G.S. 97-31. Ordinarily, where permanent disability is reduced to a lesser degree, the employer or insurance carrier is benefitted, since the amount of compensation to be paid is lessened. We do not believe the Legislature which enacted the Workmen's Compensation Act intended that there must be complete recovery within a stated time in order than an employee might continue to receive medical benefits under the statute beyond the ten-week period.

> "The Compensation Act requires that it be liberally construed to effectuate the objects for which it was passed — to provide compensation for workers injured in industrial accidents. . . . It is the duty of the court to determine whether, in any reasonable view of the evidence, it is sufficient to support the critical findings necessary to permit an award of compensation. The court does not weigh the evidence. That is the function of the Commission. If there is any evidence of substance which directly, or by reasonable inference, tends to support the findings, the courts are bound by them, 'even though there is evidence that would have supported a finding to the contrary.' *Searcy v. Branson*, 253 N.C. 64, 116 S.E. 2d 175." *Keller v. Wiring Co.*, 259 N.C. 222, 130 S.E. 2d 342.

We hold that the evidence before the Commission was sufficient to support its findings and conclusions and to sustain the award.

The judgment of the court below is

Affirmed.