Ridenhour v. Transport Corp.

HOYLE R. RIDENHOUR, Employee, Plaintiff v. FISHER TRANSPORT CORPORA-
TION, NON-INSURED, Employer, Defendant

No. 8010IC453

(Filed 16 December 1980)

**Master and Servant § 69.1— workers' compensation — permanent partial
disability — capacity to earn wages as measure of disability**

> While in the ordinary case "disability" can be measured in terms of percentage,
> where, as in this case, the claimant has a pre-existing "disability" to the same part of
> the body which is affected by a subsequent compensable injury, "disability" must be
> measured in terms of capacity to earn wages; therefore, the Industrial Commission
> erred in denying plaintiff any compensation for permanent partial disability as a
> result of a compensable injury, since it was only after plaintiff's disability, both
> before and after the compensable injury, was related to and expressed in terms of
> plaintiff's capacity to function in his regular job of truck driver that the Commission
> could determine whether plaintiff was entitled to any compensation for permanent
> partial disability to his back as a result of the injury in question, and before the
> Commission can make such findings, there must be a new hearing to clarify the
> medical testimony.

APPEAL by plaintiff from the Opinion and Award of the *Industrial Commission* filed 5 October 1979. Heard in the Court of Appeals on 6 November 1980.

In this workers' compensation action, plaintiff seeks compensation for temporary total disability and permanent partial disability arising out of an accident occurring 4 June 1976 while employed by defendant. At a hearing conducted before Commissioner Coy M. Vance on 8 March 1979, testimony was taken from plaintiff and Dr. William Mason, an expert in the field of orthopedic surgery.

Acording to the record before us, Dr. Mason testified as follows:

Q. (Mr. Gray) Would you relate to the Commissioner what occurred or what observations you made as to Mr. Ridenhour's condition at a later time?

A. (Dr. Mason) I saw him on the 6th of October, three (3) days after discharge, doing well, removed sutures, wound was healing . . . and I felt at that time that he would never return to driving a truck or doing heavy labor. He was referred to technical institute for trade or some other work not using the back.

Q. (Mr. Gray) Did you at any time advise him to return to work?

Ridenhour v. Transport Corp.

A. (Dr. Mason) I never advised him to return to truck driving.

Q. (Mr. Gray) Doctor, in reference to your examination and the medical history, do you have an opinion satisfactory to yourself as to whether or not Mr. Ridenhour has some permanent-partial disability after his spinal operation?

MS. BEHAN: Objection.

THE COURT: Overruled.

A. (Dr. Mason) Yes.

Q. (Mr. Gray) And, what is that?

A. (Dr. Mason) Approximately 30 percent.

Q. (Ms. Behan) Now doctor did you have x-ray examinations taken after the surgery performed in February of 1976?

A. (Dr. Mason) The myleogram we took in September was the only other x-rays following the ones Dr. Lockert took.

Q. (Ms. Behan) What did the myleogram in September, 1976 show?

A. (Dr. Mason) It showed that he had a defective nerve root on the right. Really compared to previous studies in February, 1976, it was somewhat increased.

Q. (Ms. Behan) When you say compared to his previous studies, what do you mean?

A. (Dr. Mason) His previous myleogram.

Q. (Ms. Behan) At that time, do you have an opinion as to Mr. Ridenhour's disability?

A. (Dr. Mason) At that time it was too early to make an opinion what this fellow's condition would be. I didn't give him a percentage of disability at that time. I reported findings and what we found in the surgery and how he was

doing.

Q. (Ms. Behan) Do you have an opinion satisfactory to yourself as to the disability Mr. Ridenhour had undergone on that date?

A. (Dr. Mason) On that date, I was saying no. It was too early to tell how much problem he was going to have. They don't do all that well down the road.

Q. (Ms. Behan) Would you say doctor then if you had to give an estimate of disability, would you say 100%?

A. (Dr. Mason) No, I would *estimate* 30% disability, as he would have to leave his present occupation.

Q. (Ms. Behan) Would this exist after this type of surgery, this type of disability exist after surgery regardless of the patient?

A. (Dr. Mason) That is correct. I always return go to 20 to 30% permanent-partial disability simply for myself and you. It is not that great because we did not do that much heavy labor that will reinjure the back.

Q. (Ms. Behan) Now doctor, would this permanent-partial disability exist even after the patient has been released from your care?

A. (Dr. Mason) Correct. I used to give them 20 to 30% permanent-partial disability.

Q. (Ms. Behan) If a typical patient were released 6 months after the operation after a back operation of the nature you performed on Mr. Ridenhour, he would have a 30%?

A. (Dr. Mason) This is correct.

Q. (Ms. Behan) Now when you saw the patient in April of 1976, would you say that at that time he had a 30% permanent-partial disability?

A. (Dr. Mason) Right, at that time he was 10 weeks post-operative. If I was asked for a disability rating, it would be *approximately* 30%.

Ridenhour v. Transport Corp.

Q. THE COURT: What was the date?

A. (Dr. Mason) April.

Q. THE COURT: Of 1976?

A. (Dr. Mason) Yes.

Q. (Ms. Behan) Now you say at this time you believe the patient has 30% disability? Is this opinion unchanged from what your opinion would have been in April of 1976?

A. (Dr. Mason) If I were asked, that is correct.

Q. (Mr. Gray) Let me ask you in English. After the first laminectomy and myleogram performed on Mr. Ridenhour in February of 1976, did you find or indicate to him to return to his original job as a truck driver?

A. (Dr. Mason) Yes, but no heavy lifting.

Q. (Mr. Gray) And after the second myleogram, do you have an opinion satisfactory to yourself as to whether or not Mr. Ridenhour could return to a job as a truck driver, after the second operation?

A. (Dr. Mason) Yes sir. At that time, I felt that with two back operations, his changes [sic] were great of having a third area, extrude at another level, and that he should not return to truck driving, as it would put increased stress on the lumbo-sacral spine.

Q. (Mr. Gray) Is that why you advised him to seek another type of employment secondary in nature?

A. (Dr. Mason) Yes sir, as a young person he done well. He would be able to be productive in supporting his family.

Q. (Mr. Gray) In reference to the operation that you performed on Mr. Ridenhour on those two different occasions, I believe you said when you performed this operation, the general partial disability is 20%, correct?

A. (Dr. Mason) Correct.

Commissioner Vance filed an Opinion and Award on 1 June 1979, and

---

Ridenhour v. Transport Corp.

---

plaintiff appealed to the full Commission. After a hearing, the Commission adopted the following findings and conclusions:

## FINDINGS OF FACT

1. Plaintiff was a twenty-three year old male employee who had worked for the defendant-employer for one and a half months as a tractor trailer driver prior to June 4, 1976, the date of the alleged injury by accident.

2. There were two drivers per truck with each driver taking turns driving five hours each in order to keep the truck on the highway continuously. On June 4, 1976, Alex Goodman was plaintiff's driving partner.

3. The trip started with Mr. Goodman driving five hours to Spartanburg, South Carolina where plaintiff started driving and drove five hours. Mr. Goodman began his second turn at the wheel and had driven one and a half hours with the plaintiff in the sleeper. The truck was traveling at approximately forty miles per hour and went down an embankment at LaGrange, Georgia by-pass. The truck turned over tossing plaintiff out of the sleeper and into the windshield of the cab. He kicked the window out and crawled out of the cab.

4. Plaintiff was taken to the emergency room at the LaGrange, Georgia hospital and treated and released to go to his family doctor at home. He had a dull pain in the back. Plaintiff visited Dr. William T. Mason in Salisbury for the first time on June 24, 1976 after the accident. He visited Dr. Mason on July 9, and 30th and was admitted to the hospital on September 10, 1976. A myleogram was performed on September 27, 1976, and revealed a nerve root problem at L-4 and 5 and he had surgery. He was discharged from the hospital on October 3, 1976 and did well.

5. Plaintiff had a laminectomy on February 19, 1976 at L-4 and 5 and he did well after surgery. He was released on April 16, 1976 and was able to perform as a truck driver without difficulty. He obtained a 30 percent permanent partial disability to the back as a result of his surgery and was advised to do no heavy lifting.

Ridenhour v. Transport Corp.

6. On June 4, 1976, plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer.

7. As a result of this injury on June 4, 1976, plaintiff was temporarily totally disabled from June 4, 1976 to December 9, 1976 the date he reached maximum recovery.

8. Plaintiff still has a 30 percent permanent partial disability of the back; and there has been no change in his disability rating since the disability rating following the injury by accident sustained on 4 June 1976. This is in accordance with the opinion of Dr. William T. Mason, who was the physician that rated plaintiff, and who expressed the opinion that plaintiff's disability was unchanged.

Based upon the foregoing findings of fact the undersigned makes the following

### CONCLUSIONS OF LAW

1. On June 4, 1976, plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer. G.S. 97-2(6).

2. As a result of his injury by accident, plaintiff was temporarily totally disabled from June 4, 1976 to December 9, 1976; therefore, he is entitled to temporary total disability compensation for twenty-six (26) and a six-seventh (6/7) weeks. G.S. 97-29.

3. [Stricken by Full Commission]

4. As a result of the injury by accident giving rise hereto, plaintiff is entitled to medical expenses incurred and the defendant is responsible for paying such expenses in the amounts sent to the employer and approved by the North Carolina Industrial Commission. G.S. 97-25.

From the Opinion and Award of the Commission filed 5 October 1979 awarding plaintiff temporary total disability, assessing defendant for plaintiff's medical expenses arising out of the 4 June 1976 accident and costs, approving attorney's fees for plaintiff's counsel, and denying plaintiff any additional compensation for permanent partial disabil-

ity, plaintiff appealed.

*Gray and Whitley, by J. Stephen Gray, for the plaintiff appellant.*

*No counsel for the defendant appellee.*

HEDRICK, Judge.

The only question presented by this appeal is whether the Commission erred in denying plaintiff any compensation for permanent partial disability as a result of the injury by accident on 4 June 1976.

G.S. § 97-2(9) provides: "The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Under our Workers' Compensation Act, therefore, loss of earning capacity is the criterion for the determination of disability. *Ashley v. Rent-A-Car Co., Inc.,* 271 N.C. 76, 155 S.E. 2d 755 (1967); *Dail v. Kellex Corp.,* 233 N.C. 446, 64 S.E.2d 438 (1951). *See also Willis v. Reidsville Drapery Plant,* 29 N.C. App. 386, 224 S.E.2d 287 (1976).

In its Finding of Fact # 5, the Industrial Commission determined that plaintiff obtained a thirty percent (30%) permanent partial disability as a result of his "surgery" in February 1976 and in its Finding of Fact # 8, the Commission determined that plaintiff "still has a 30 percent permanent partial disability of the back; and there has been no change in his disability *rating* since the disability rating following the injury by accident sustained on 4 June 1976." [Emphasis added.] Assuming that these findings are supported by competent evidence in the record, the Commission has failed to make the critical finding whether plaintiff suffered any permanent partial *disability* as a result of the compensable 4 June 1976 injury., The statement by the Commission in Finding of Fact # 8 that Dr. Mason "expressed the opinion that plaintiff's disability was unchanged" is not a finding but merely a recital of Dr. Mason's opinion. Furthermore, if the Commission had found as a fact that plaintiff's "disability" was "unchanged," we could not say that such a finding was supported by the evidence in this record.

Because of the equivocal nature of Dr. Mason's testimony, we can understand the Commission's failure to make the critical finding as to permanent partial disability. While in the ordinary case "disability" can be measured in terms of percentage, where, as here, the claimant has a pre-existing "disability" to the same part of the body

which is affected by a subsequent compensable injury, "disability" must be measured in terms of capacity to earn wages. Only after plaintiff's disability, both before and after the 4 June injury, is related to and expressed in terms of plaintiff's capacity to function as a truck driver can the Commission determine whether plaintiff is entitled to any compensation for permanent partial disability to his back as a result of the 4 June injury. Before the Commission can make such findings, it is necessary that there be a new hearing to clarify the medical testimony.

That portion of the Opinion and Award requiring defendant to pay temporary total disability and plaintiff's medical expenses arising out of the accident, and approval of attorney's fees for plaintiff's counsel is affirmed; that portion of the opinion and award denying plaintiff any compensation for permanent partial disability is vacated and the cause is remanded to the Industrial Commission for a further hearing with respect to whether plaintiff sustained any permanent partial disability as a result of the 4 June 1976 accident, more definitive findings thereto, and the entry of an appropriate order.

Affirmed in part; vacated and remanded in part.

Judges CLARK and WHICHARD concur.