MARY S. ADAMS, Employee, Plaintiff,
v.
WINSTON-SALEM/FORSYTH COUNTY SCHOOLS, Employer, SELF-INSURED (KEY RISK MANAGEMENT SERVICES, Third-Party Administrator), Defendants.
No. COA08-815
Court of Appeals of North Carolina
Filed May 5, 2009
This case not for publication
Franklin Smith for plaintiff-appellant.
Attorney General Roy A. Cooper, III, by Assistant Attorney General Vanessa N. Totten, for defendant-appellees.
ROBERT C. HUNTER, Judge.
Plaintiff Mary S. Adams ("plaintiff") appeals from an Industrial Commission opinion and award denying her claim for permanent and total disability benefits. On appeal, plaintiff asserts that the Industrial Commission (the "Commission") erred by: (1) denying her Motion for Change of Condition made pursuant to N.C. Gen. Stat. § 97-47 (2007) and (2) finding and concluding that she was not permanently and totally disabled. After careful review, we affirm.

I. Background
The Commission's findings of fact[1] establish that at the time the Commission filed its opinion and award, plaintiff was approximately 65 years old with a Masters Degree in special education, social sciences, curriculum, and supervision. Prior to plaintiff's employment with defendant Winston-Salem/Forsyth County Schools ("defendant"), she worked as a teacher in Idaho, Virginia and in Watauga and Columbus counties in North Carolina. Plaintiff was employed as a teacher with defendant for over 30 years and possessed approximately 40 years of teaching experience.
In February 2001, plaintiff was in defendant's employ and teaching at Amos Cottage, where she provided education services to children, many of whom had special needs. On 5 February 2001, plaintiff sustained injuries to her right arm, shoulder, neck, and chest wall while trying to calm and subdue a violent child. As a result of these compensable injuries, defendant paid her total disability benefits at the 2001 maximum compensation rate based on her average weekly wage.
On 7 February 2001, plaintiff began receiving treatment for right shoulder strain, chest wall strain, and upper arm strain. On 27 February 2001, she was referred to an orthopaedic specialist for evaluation and treatment. On 26 April 2001, she was diagnosed with cervical strain, shoulder bursitis, and carpal tunnel syndrome on the right side. Plaintiff was referred to physical therapy for her shoulder and neck and placed on light duty restrictions with limited use of the right upper extremity.
On 22 August 2001, Dr. David O'Brien, Jr. concluded that plaintiff's neck and low back pain had improved somewhat, but that it was persistent and its etiology was unclear. Plaintiff was released to full duty with no work restrictions. In October 2001, she "was diagnosed with possible right C6 radiculopathy due to her cervical disc protrusion or herniation at C5-6" and was referred to Dr. Harlan Daubert ("Dr. Daubert") for a surgical consultation in April 2002.
On 12 August 2002, Dr. Daubert recommended that plaintiff undergo a "C6 anterior disectomy and fusion with iliac crest bone graft." This surgery was performed on 18 October 2002. Plaintiff was out of work until 31 January 2003.
On 1 February 2003, plaintiff returned to work and was placed on light duty restrictions which included a prohibition against lifting more than ten pounds. On 29 April 2003, she "was diagnosed with right rotator cuff tendinitis without rotator cuff tear" and continued to work with the same light duty restrictions.
In April 2003, plaintiff was referred to Dr. John E. Ritchie ("Dr. Ritchie") for right shoulder evaluation and treatment. On 19 May 2003, Dr. Ritchie opined that it was "`difficult to tell exactly where her pain is coming from, but most of her exam is consistent with impingement syndrome.'" Plaintiff's work restrictions were modified to prohibit her from lifting over 15 pounds.
In 2003, Amos Cottage closed, and plaintiff was transferred to a home bound program where students were taught in their homes. She underwent shoulder surgery in June 2004. On 12 August 2004, plaintiff complained about problems holding books for her disabled students and bringing materials in and out of their homes. Consequently, Dr. Ritchie recommended, inter alia, that plaintiff not engage in any overhead lifting and refrain from lifting more than ten pounds. On 9 September 2004, Dr. Ritchie "noted that plaintiff's shoulder had improved but was still not doing well." Later, in September 2004, plaintiff saw Dr. Daubert, "who noted that plaintiff's fusion had still not healed completely."
On 6 December 2004, plaintiff was released with no work restrictions for her right shoulder injury, but continued to complain of neck and shoulder pain. She was placed on a 15-pound permanent lifting restriction for her neck injury in February 2005.
Plaintiff discussed possible retirement with Ms. Linda Bourne, who was employed with defendant. On 28 March 2005, plaintiff submitted a "`Teacher's Notification of Intent' to retire if eligible for full service retirement[,]" but did not request a transfer from the home bound program. On 26 April 2005, plaintiff addressed a letter to Dr. Donald Martin, defendant's Superintendent, stating "that she was `very excited about exploring the new experiences, adventures, and challenges, that retirement will bring.'" On 1 July 2005, she retired with full service retirement benefits.
On 17 October 2005, Dr. Daubert performed an additional operation on plaintiff's neck. On 10 March 2006, he opined that plaintiff was at maximum medical improvement with a 15% permanent partial disability to her neck. She was placed on permanent work restrictions of no lifting over 15 pounds. On 20 March 2006, Dr. Ritchie assigned a 20% permanent partial disability rating to plaintiff's shoulder.
On 21 February 2006, plaintiff filed a Form 18 Notice of Accident to Employer and Claim of Employee and a Form 33 Request for Hearing. The case was heard by Deputy Commissioner John B. Deluca on 27 February 2007.
Plaintiff testified that Dr. Daubert and Dr. Ritchie both recommended that she retire from her teaching position. Dr. Daubert testified that there was no reference in his medical records to plaintiff retiring either before or after 1 July 2005 and that he was not aware she had retired until the date of his deposition. Dr. Ritchie testified that, in his medical opinion, plaintiff was not permanently and totally disabled. When asked if he recommended retirement for plaintiff, Dr. Ritchie stated, "`I don't recall, specifically, stating that [or] making a direct recommendation that she should retire.'" Dr. Ritchie further stated that "`most teachers can teach with the restrictions'" plaintiff had at the time she retired. Based on her educational background and work experience, plaintiff was also qualified for other readily available positions with defendant. However, she never requested a transfer within defendant's system and elected to retire before reaching maximum medical improvement.
On 30 July 2007, Deputy Commissioner Deluca filed an opinion and award concluding, inter alia, that plaintiff had failed to meet her burden of proof that she was disabled as a result of her compensable injury. Plaintiff appealed to the Commission. At the hearing, plaintiff submitted a "[M]otion for a Change of Condition pursuant to N.C. Gen. Stat. § 97-47." In an opinion and award filed 17 March 2008, the Commission denied said motion and adopted the opinion and award of Deputy Commissioner Deluca with minor modifications. The Commission concluded, inter alia, that plaintiff "failed to meet her burden of proof that she [was] disabled as a result of her compensable injury[;]" "failed to prove that she [was] permanently and totally disabled as a result of her compensable injury on" 5 February 2001; and therefore, that she was "not entitled to permanent and total disability compensation." This appeal followed.

II. Analysis

A. Appellate Rules Violations and Standard of Review
At the outset, we note that plaintiff's brief and her assignments of error violate the North Carolina Rules of Appellate Procedure, which consequently affects our review of the issues she brings forth on appeal. N.C.R. App. P. 10(a) provides that "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10." In addition, N.C.R. App. P. 10(c)(1) states:
A listing of the assignments of error upon which an appeal is predicated shall be stated at the conclusion of the record on appeal, in short form without argument, and shall be separately numbered. Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned. An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references. Questions made as to several issues or findings relating to one ground of recovery or defense may be combined in one assignment of error, if separate record or transcript references are made.
In the instant appeal, plaintiff includes in the record a single, properly listed assignment of error which states: "The Court committed error in failing to allow Plaintiff Workers [sic] Compensation benefits because she elected to take her retirement under the State's Retirement Act for teachers." Neither issue that plaintiff asserts on appeal is covered by this broad assignment of error. Nevertheless, plaintiff also includes in the record a section entitled "Objections and Exceptions of Employee-Plaintiff" which immediately precedes her lone assignment of error. In this section, plaintiff challenges the Commission's findings of fact 17-24 and 26-28 as "not [being] based upon the substantial evidence of record" and conclusions of law 1-6 as "not [being] based upon the substantial evidence of record or the law that is applicable in this case." Plaintiff also objects and takes exception to the "denial of [her] Motion for Change of Condition" in this section.
Even if plaintiff's "Objections and Exceptions" are viewed generously as properly submitted assignments of error, as discussed infra, plaintiff's brief fails to sufficiently preserve for appellate review the issue of the Commission's denial of her Motion for Change of Condition and does not adequately challenge the findings of fact to which she objects.
First, in her brief, plaintiff fails to provide any standard of review regarding either issue she raises on appeal and does not reference her Objections and Exceptions to support these issues in violation of N.C.R. App. P. 28(b)(6). Furthermore, plaintiff fails to offer any coherent argument as to the Commission's denial of her Motion for Change of Condition and cites no legal authority in support thereof. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(6). Accordingly, we conclude this issue is abandoned.
Next, in her brief, plaintiff does not reference which specific findings of fact she asserts lack evidentiary support, nor does she offer any coherent argument as to why they are erroneous. Accordingly, the Commission's findings of fact are binding on appeal. Treat v. Mecklenburg County, __ N.C. App. __, __, 669 S.E.2d 800, 803 (2008) (stating that where a "[p]laintiff fails to argue [in her brief] that any specific findings of fact made by the Full Commission were not based upon sufficient evidence in the record[, t]he findings of the Full Commission are thus binding on appeal"). As a result, our review is limited to "whether the [Commission's] conclusions of law are justified by the findings of fact." Johnson v. Southern Tire Sales & Serv., 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004).
However, even our review of the Commission's conclusions of law is limited here. As with the Commission's findings of fact, plaintiff's brief does not make reference to which specific conclusions of law she is challenging on appeal in violation of N.C.R. App. P. 28(b)(6). Hence, even though we elect to exercise our discretion and review the merits of plaintiff's appeal, Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co., 362 N.C. 191, 200-201, 657 S.E.2d 361, 366-67 (2008), the only argument we can discern from plaintiff's brief is an apparent assertion that the Commission erred by concluding that plaintiff failed to prove that she is permanently and totally disabled as a result of her compensable injury on 5 February 2001. As discussed infra, this argument is without merit.

B. Permanent and Total Disability
Under the Workers' Compensation Act, "[a]n employee injured in the course of his employment is disabled . . . if the injury results in an `incapacity . . . to earn the wages which the employee was receiving at the time of the injury in the same or any other employment.'" Russell v. Lowes Product Distribution, 108N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (alteration in original) (quoting N.C. Gen. Stat. § 97-2(9)(1991)). Hence, "`disability'" as defined in the Workers' Compensation Act is the impairment of the injured employee's earning capacity and not physical disablement. Peoples v. Cone Mills Corp., 316 N.C. 426, 434, 342 S.E.2d 798, 804 (1986) (quoting Ashley v. Rent-A-Car Co., 271 N.C. 76, 84, 155 S.E.2d 755, 761 (1967)). The burden is on the employee to make this showing. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982).
The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell, 108 N.C. App. at 765, 425 S.E.2d at 457 (citations omitted).
In her brief, plaintiff concedes that numbers two through four are inapplicable to the instant case, stating: "Plaintiff does not contend that 2,3, and 4 [sic] applies [sic] to this case." Hence, the sole issue before us is whether plaintiff met her burden of proof by producing sufficient medical evidence that "[s]he [wa]s physically or mentally, as a consequence of the work related injury, incapable of work in any employment." Id. at 765, 425 S.E.2d at 457.
Although plaintiff testified that Dr. Daubert and Dr. Ritchie both recommended that she retire from teaching, the Commission's binding findings of fact numbers 20, 21, and 22 provide that neither Dr. Daubert nor Dr. Ritchie made such a recommendation. Further, finding of fact number 22 provides that Dr. Ritchie stated that "`most teachers can teach with the restrictions . . . [plaintiff] had'" at the time of her retirement in July 2005. In addition, findings of fact 26 and 27, respectively, provide in pertinent part that "Dr. Ritchie testified in his medical opinion that he did not believe that plaintiff was permanently and totally disabled" and that Dr. Daubert and Dr. Ritchie both "testified that plaintiff was physically and mentally capable of earning wages."
We hold that these findings of fact adequately support the Commission's conclusions of law that: "[p]laintiff . . . failed to meet her burden of proof that she [was] disabled as a result of her compensable injury[;]" that plaintiff "failed to prove that she [was] permanently and totally disabled as a result of her compensable injury on" 5 February 2001; and "therefore, [that] plaintiff [was] not entitled to permanent and total disability compensation." Accordingly, the Commission's opinion and award is affirmed.
Affirmed.
Judges WYNN and ERVIN concur.
Report per Rule 30(e).
NOTES
[1] As discussed infra, because plaintiff does not sufficiently challenge the Commission's findings of fact in her brief, said findings are binding on appeal.