BAXTER HENSLEY, EMPLOYEE, v. FARMERS FEDERATION COOPERA-
TIVE, EMPLOYER; NATION-WIDE INSURANCE COMPANIES, CARRIER.

(Filed 22 May, 1957.)

**1. Master and Servant § 55d—**

While the findings of fact of the Industrial Commission are conclusive
on appeal when supported by any evidence, and claimant is entitled to
every reasonable inference which can be drawn from the testimony, when
all the evidence and the inferences to be drawn therefrom result in only
one conclusion, liability is a question of law subject to review.

**2. Same—**

The evidence tended to show that claimant, in the course of his employ-
ment, was required to turn to his left, pick up a loaded tray, bend over
and place the tray in a drum of hot water in front of him, and then place
the tray on scales to his right. The findings were to the effect that claim-
ant's duties required him to "twist" to his left, return to the "normal"
position facing straight ahead, bend over and dip the basket, then straighten
up to a "normal" standing position and then "twist" to his right . . .
*Held:* The findings are in accord with the testimony when the word "twist"
is construed as "turn," and the word "normal" is construed as "usual."

**3. Master and Servant § 40g—**

In order for a hernia to be compensable under the Compensation Act
it is required that there be an injury resulting in hernia or rupture, that
it appear suddenly, that it be accompanied by pain, and that it imme-
diately follow an accident.

**4. Master and Servant § 40b—**

The mere fact that an employee suffers an injury does not establish the
fact of accident, and it is required by the Workmen's Compensation Act
that an injury, in order to be compensable, result from an accident, which
is an unlooked for and untoward event which is not expected or designed
by the person who suffers the injury.

**5. Master and Servant § 40g—**

The evidence disclosed that claimant in performing his duties in lifting
a loaded basket from his left, bending down and placing it in hot water
in front of him and then placing it on scales to his right, suddenly suffered
a hernia accompanied by pain. The evidence further tended to show that
the hernia occurred while the employee was performing his work in the
customary and usual manner, and there was no evidence of any unusual
condition or any slipping or falling by the employee. *Held:* There was
no evidence to justify a finding that the hernia resulted from an accident,
and an award of compensation must be reversed.

**6. Constitutional Law § 10c—**

It is the duty of the courts to declare the law as written and to give to
statutes the same interpretation theretofore given in former decisions, the
duty to make the law being the exclusive province of the General Assembly.

APPEAL by defendants from *Sink, E. J.*, September "A" 1956 Civil Term of BUNCOMBE.

Plaintiff claims compensation and surgical expenses for hernia as provided by the Workmen's Compensation Act, G.S. 97-2. At the time of his injury he had been employed by defendant Farmers Federation for a period of two and one-half years to "turn chickens." The Commission, after a hearing, found: "1. . . . his duties required him to work in a standing position; that he turned and twisted to his left and using both hands picked up a wire basket containing six chickens weighing 26½ to 48 pounds from a table approximately three feet high; that after claimant picked up the basket of chickens he would then return to the normal position facing straight ahead, bend over, and dip the basket of chickens in a 30-gallon oil drum containing hot water; that claimant would then straighten up to a normal standing position and would then turn and twist to his right and place the basket of chickens on a scale approximately 3 feet from the ground.

"2. That at 5:00 P.M. on August 26, 1955, while working for defendant employer and while performing the operation above described, claimant turned and twisted to his left and picked up a wire basket containing six chickens weighing 26½ to 48 pounds from the table; that as claimant lifted the chickens, he felt a pain in his left side; that he immediately reported the occurrence to his supervisor, Gordon Barnwell, and told Barnwell that he could not do any more lifting and would have to quit and go home."

Plaintiff was not scheduled to work on Saturday, 27 August, or Sunday, 28 August. He returned to work on Monday morning, 29 August, and worked that day and 30 August. On the morning of 31 August he first noticed that he had a bulge or protrusion on his left side. He reported that morning to his employer and was directed to see a doctor. He continued with his work on 1 and 2 September. On 3 September he saw a surgeon who informed him he was suffering with a hernia. The surgeon, not understanding the nature of plaintiff's work, directed him to continue with his work until 10 September. He did so notwithstanding the pain he suffered. He was hospitalized on 12 September for herniorrhaphy. He returned to work 24 October 1955.

The Commission further found: "4. That as above described, claimant had an injury by accident arising out of and in the course of his employment with defendant employer resulting in a left inguinal hernia.

"5. That the hernia or rupture appeared suddenly, was accompanied by pain, immediately followed an accident, and did not exist prior to August 26, 1955."

Based on its findings of fact, the Commission, citing *Edwards v. Publishing Co.*, 227 N.C. 184, 41 S.E. 2d 592, concluded as a matter of law that plaintiff had sustained an injury by accident, that the result-

ing hernia met the statutory requirements, and made an award for compensation and surgical expenses.

Defendants excepted to the use of the words "twisted," "normal," and "twist" in the findings; to the finding that plaintiff sustained an injury by accident arising out of and in the course of his employment, and to the finding that the hernia immediately followed an accident. Appropriate exceptions were noted to the conclusions of law; an appeal was taken from the award made by the Commission to the Superior Court. Defendants' exceptions were overruled and judgment was entered affirming the award. Defendants, preserving the exceptions taken, appealed.

*Williams & Williams for defendant appellants.*
*No counsel contra.*

RODMAN, J. The crucial question presented by the exceptions is: Does the evidence suffice to show that plaintiff, in the course of his employment, sustained a compensable hernia?

Defendants' exceptions necessitate a review of the evidence. We do so in conformity with the well-settled rule that findings of fact made by the Commission are, when supported by any evidence, conclusive on appeal. Plaintiff is entitled to urge, in support of the findings, every reasonable inference which can be drawn from the testimony; but when all the evidence and the inferences to be drawn therefrom result in only one conclusion, liability is a question of law subject to review. *Thomason v. Cab Co.,* 235 N.C. 602, 70 S.E. 2d 706; *Henry v. Leather Co.,* 231 N.C. 477, 57 S.E. 2d 760; *Perley v. Paving Co.,* 228 N.C. 479, 46 S.E. 2d 298; *Smith v. Paper Co.,* 226 N.C. 47, 36 S.E. 2d 730.

If the Commission in its findings of fact used the words "twisted," "normal," and "twist" in the sense that there was something abnormal in plaintiff's movement when he felt the pain, the finding is not supported by the evidence. We understand the Commission used the words "twisted" and "twist" as meaning "turned" and "turn" and the word "normal" as the equivalent of "usual." When so understood, they accord with plaintiff's testimony. He did not use any of the quoted words.

He described his work in this manner: "I was dipping chickens in barrels of water, six chickens at a time, pick them up off a table and dipping them in a barrel of water and picking them back up and put them on a scale. I would turn to my left and get the chickens off a table about three feet high. The table was about equal height all the way around. I was standing up, and turned to my left and got six chickens off a table about three feet high. I then turned them around and dipped them and into a barrel of water, to the right. I had to stoop

down to do that. The tub was on the floor. I brought them back out of the barrel and placed them on the scales to get weighed. . . . When I got the chickens out of the barrel of water, I turned around and put them on the scales to my right. . . . I had been doing that kind of work for the Federation for about two and a half years at that time."

With respect to the moment of injury he said: "I was dipping those chickens in that barrel of water when the pain first started. . . . I had come off the table with a basket of chickens to take them and dip them in a barrel of water. I had turned to my left to get the chickens off the table when I first felt it and it was from that on the more I dipped the chickens the worse it got." On cross-examination he said: "I handled every one of them essentially, exactly alike. I picked them up off the table as I have described, to my left, dipped them in a tub of water straight in front of me. Then I put them on the scales to my right. . . . I was doing them the same way on this day that I felt the pain. On the particular one, when I felt the pain, I hadn't handled it any different from any of the others. I didn't slip or fall or turn or anything of that sort."

The normal manner of operation at the moment he felt the pain is emphasized by questions asked later in the testimony. "Q Now, I want to be sure I understand. At the time you first experienced this pain, you hadn't done anything, slipped, twisted, turned or anything, fallen down, or anything different than you had been doing for two years. A No, sir, I hadn't. Q And the weight you were lifting wasn't any heavier than the weight you had been lifting for the last two years? A That's right."

Dr. Chapman, who treated plaintiff, found the hernia when he first examined him on 3 September. He expressed the opinion that work of the kind and done in the manner described by plaintiff could have caused the hernia.

A hernia, to be compensable, must, by the express language of our statute, G.S. 97-2, meet five conditions:

"First. That there was an injury resulting in hernia or rupture."

Injury is defined as "Damage or hurt done to or suffered by a person or thing." Webster's Int. Dic.

The evidence is sufficient to justify a finding that plaintiff had an injury resulting in hernia. The first requirement is met.

"Second. That the hernia or rupture appeared suddenly." For the purpose of this case it may be conceded that the second requirement is established.

"Third. That it was accompanied by pain." Plaintiff so testified. The Commission accepted his testimony. The third requirement is met.

"Fourth. That the hernia or rupture immediately followed an accident."

Where is the evidence to support an affirmative finding to this condition? What is an accident? The mere fact that plaintiff suffered an injury does not establish the fact of accident.

The Workmen's Compensation Act was enacted in 1929. At the Spring Term 1930 the word "accident," as used in the Act, was defined. *Justice Adams* said: "The word 'accident,' as used here, has been defined as an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." *Conrad v. Foundry Company*, 198 N.C. 723, 153 S.E. 266.

The distinction between and necessity of both injury and accident was emphasized in *Slade v. Hosiery Mills*, 209 N.C. 823, 184 S.E. 844, decided Spring Term 1936. There an employee, performing his work in the usual and customary manner, got wet and contracted pneumonia. *Stacy, C. J.*, said: "Death from injury by accident implies a result produced by a fortuitous cause. *Scott v. Ins. Co.*, 208 N.C. 160, 179 S.E. 434. A compensable death, then, is one which results to an employee from an injury by accident arising out of and in the course of the employment. There must be an accident followed by an injury by such accident which results in harm to the employee before it is compensable under our statute."

The rule enunciated in the Slade case that death or injury sustained as a result of work by the employee in his usual, customary manner and without some fortuitous event is not compensable was reiterated the following year in *Neely v. Statesville*, 212 N.C. 365, 193 S.E. 664. There a fireman died from a heart attack while engaged in fighting a fire. The Court said: "The work in which the deceased was engaged was the usual work incident to his employment. The surrounding conditions might be expected at a fire. The falling in of the roof is a natural result of fire burning there. Heat and smoke are expected. Physical exertion is required in handling hose and fire-fighting equipment. The firemen, of necessity, act hurriedly. We find no evidence of an accident."

*Moore v. Sales Co.*, 214 N.C. 424, 199 S.E. 605, was decided at the Fall Term 1938. Plaintiff claimed compensation for hernia. He was injured while helping in the lifting of heavy pipes. The Commission found the hernia compensable and awarded compensation. The award was affirmed. The defendants there insisted that compensation was forbidden by the decisions in the *Slade* and *Neely cases, supra. Justice Seawell*, responding to this argument, said: "This could be so only to the extent that the cases were on all-fours. Since the *Neely case, supra,* and the *Slade case, supra,* merely applied well-known principles of law to the circumstances peculiar to those cases." He then points to the difference, viz., the injured employee was not accustomed to do that kind and character of heavy work. He said: "In the case at bar, there

is in the foregoing sufficient evidence of the interruption of the routine of work, and the introduction thereby of unusual conditions likely to result in unexpected consequences, and these were of such a character as to justify the Industrial Commission in finding that plaintiff's injury was the result of an accident."

A similar result was reached in *Gabriel v. Newton*, 227 N.C. 314, 42 S.E. 2d 96, where there was unusual and unexpected exertion and straining in the performance of duties, thus producing the heart attack which resulted in death.

*Smith v. Creamery Co.*, 217 N.C. 468, 8 S.E. 2d 231, was decided in 1940. The Court was again called upon to determine liability in hernia cases. Factually the case came within the rule announced by the Court in *Moore v. Sales Co., supra,* and hence outside of the rule laid down in the *Slade* and *Neely cases, supra.* This was frankly recognized by *Justice Seawell,* who wrote the opinion. Having announced the fact, he uses language which lends support to the argument that the Court intended to adopt a new rule and hold that injury and accident were equivalent, at least in hernia and similar cases involving bodily infirmities. That the Court did not intend to abandon the rule announced in previous decisions that compensation could not be awarded unless the injury was produced by an accident seems apparent. *Buchanan v. Highway Commission,* 217 N.C. 173, 7 S.E. 2d 382, was decided shortly prior to *Smith v. Creamery Co., supra.* There an employee "while lifting the scoop in the usual manner without anything unusual happening turned sick and blind and was unable to work for several days . . ." In sustaining the Commission's finding that there was no injury by accident, *Devin, J.,* said: ". . . we conclude that this was not an injury by accident arising out of and in the course of plaintiff's employment, so as to bring the case within the purview of the Workmen's Compensation Act." He cites as authority *Neely v. Statesville, supra,* and *Slade v. Hosiery Mills, supra.*

The Court was next called upon to consider this question in the case of *Edwards v. Publishing Co.,* 227 N.C. 184, 41 S.E. 2d 592. There the Commission found that the injury was produced by the twisted and unusual position of the body when claimant had to handle the weight. The receiving of the weight in this abnormal position was the fortuitous event or accident which sufficed to meet the terms of the statute. That the Court so understood and that *Justice Seawell,* who wrote the opinion in the case of *Smith v. Creamery Co.,* so understood, is emphasized by his separate opinion concurring in the result but vigorously dissenting from the reasoning of the Court. In the course of his opinion, he says: "I do not question the right of the Court to overrule or disregard *Smith v. Creamery Co., supra,* without assigning any reason for it. It cannot be distinguished." He overlooks the fact he had, in the *Smith case,*

pointed out the very facts which justified the affirmance of the award made by the Commission.

The necessity of establishing both accident and injury has been recognized by the Commission; and its awards denying compensation have been affirmed because the evidence demonstrated the death or injury occurred when the work was performed in the customary and usual manner. *West v. Dept. of Conservation*, 229 N.C. 232, 49 S.E. 2d 398; *Johnson v. Cotton Mills*, 232 N.C. 321, 59 S.E. 2d 828.

Procedural defects prevented the correction of another award where the work was done in the usual and customary manner. *Beaver v. Paint Co.*, 240 N.C. 328, 82 S.E. 2d 113.

We are aware that the interpretation given to our statute does not harmonize with the interpretation given by a majority of the courts to the compensation statutes of their States. Differing results are in some cases due to varying provisions of the different statutes. *Williams v. National Cash Register Co.*, 262 N.W. 306 (Mich.); *Travelers Ins. Co. v. Shepard*, 20 So. 2d 903 (Fla.); *Beadle v. Bethlehem Steel Co.*, 193 A. 240 (Md.); *Kendrick v. Sheffield Steel Corporation*, 166 S.W. 2d 590 (Mo.); *Screeton v. F. W. Woolworth Co.*, 166 S.W. 2d 589 (Mo.), and *Higbee v. Fire Brick Co.*, 191 S.W. 2d 257 (Mo.), are illustrative of cases from other jurisdictions in accord with the conclusions we have reached.

*Layton v. Hammond-Brown-Jennings Co.*, 3 S.E. 2d 492 (S.C.); *Maryland Casualty Co. v. Robinson*, 141 S.E. 225 (Va.); *Hardware Mut. Casualty Co. v. Sprayberry*, 25 S.E. 2d 74 (Ga.); *St. John v. U. Piccolo & Co.*, 25 A. 2d 54 (Conn.) illustrate the opposite view. The difference in viewpoints is noted in the opinion of *Justice Parker* in *Lewter v. Enterprises, Inc.*, 240 N.C. 399, 82 S.E. 2d 410. The question of what is compensable hernia is considered in the annotations to 98 A.L.R. 205; 58 Am. Jur. 756; Larson Workmen's Comp., V. 1, sec. 39.70 *et seq.*

If the question was now presented for the first time, we would feel at liberty to give more consideration to the reasoning of the cases which reach conclusions differing from our own, but we are not dealing with a new question. Twenty years and more ago the Court placed its interpretation on the Act. Except for the *dicta* to be found in the opinion by *Justice Seawell* in the case of *Smith v. Creamery Co.*, the language used as well as the conclusions reached have supported the interpretation that injury and accident are separate and that there must be an accident which produces the injury before the employee can be awarded compensation.

The legislative history strengthens the view here expressed as to the meaning of the word "accident" as used in the original Act. In 1935, when the Act was amended to provide compensation for occupational diseases, no change was made in the provisions relating to hernia. But

it was expressly provided: "The word 'accident,' as used in the Workmen's Compensation Act, shall not be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously or at frequent intervals in the course of such employment, over extended periods of time, whether such events may or may not be attributable to fault of the employer . . ." G.S. 97-52.

The interpretation so consistently given to the statute is as much a part of the statute as if expressly written in it. We have no right to change or ignore it. If it is to be changed, it must be done by the Legislature, the law-making power. If, in its wisdom, a change is desirable, it can readily do so.

There was evidence to justify the finding that plaintiff had not suffered from hernia prior to 26 August 1955. The fifth requirement is met.

Since there is no evidence to support the finding that plaintiff's hernia or rupture immediately followed an accident, the award lacks the requisite fourth pillar for its support.

The judgment is
Reversed.