Although the per curiam opinion of the North Carolina Supreme Court inWoody vs. Thomasville Upholstery, Inc., ___ N.C. ___ (May 10, 2002), adopting without discussion the dissenting opinion of Judge Martin in146 N.C. App. 187, 552 S.E.2d 202 would appear to fully support the majority opinion of the Full Commission in the present case, I must respectfully dissent.
I believe that the Supreme Court must revisit its per curiam opinion as wrongly decided. In any event, the Woody case is distinguishable from the case at bar. Woody involved prolonged harassment of an employee rather than a single causal event, as in the instant case. Woody was an occupational disease claim. In such cases, G.S. § 97-53(13) is the applicable standard. In the instant case, however, the better view of the facts and law is that the instant claim arose from an injury by accident. Under this standard, all that is required to be shown is an unusual or unexpected occurrence in the course and scope of employment resulting in injury. Toler v. Black Decker, 134 N.C. App. 635,518 S.E.2d 547, 551 (1999); Jordan v. Central Piedmont CommunityCollege, 124 N.C. App. 112, 476 S.E.2d 410 (1996); Hinsley v.Cooperative, 246 N.C. 274, 278, 98 S.E.2d 289, 292 (1957); Cody v. SniderLumber Co., 96 N.C. App. 293, 385 S.E.2d 515 (1989) (rev'd on other grounds, 328 N.C. 67, 399 S.E.2d 104 (1991); Davis v. Raleigh RentalCenter, 58 N.C. App. 113, 292 S.E.2d 763 (1982)
In Woody, the Supreme Court was apparently unaware of its own decision in Rutledge v. Tultex Corp./Kings Yarn, 308 N.C. 85, 301 S.E.2d 359
(1983). Therein, the Court held: "To satisfy the first and second elements [of an occupational disease claim] it is not necessary that the disease originate exclusively from or be unique to the particular trade or occupation in question. All ordinary diseases of life are not excluded from the statutes' coverage. Only such ordinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded. . . . Thus, the first two elements are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally. `The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation.'"
In my view the dissenting opinion in Woody demonstrated an apparent lack of knowledge of the intent and purposes of the Workers' Compensation Act, its interpretation throughout the country as reported in Arthur Larson's treatise on workers compensation, and the irrational effect application of such reasoning would have on the entire Workers' Compensation Act. The opinion reasoned that since an abusive supervisor "can occur with any employee in any industry or profession . . . or similar abusive relationships outside the workplace" the depression resulting from workplace abuse from an abusive supervisor was an ordinary disease of life to which the general public was equally exposed. Under such reasoning, carpal tunnel cases would not be occupational diseases because people use their hands outside their employment. Silicosis cases would not be compensable because people are exposed to sand and dust outside of their employment. In sum, the dissenting opinion was based upon the fact that an abusive supervisor might be present in other employment, totally disregarding the undisputed evidence that an abusive supervisor was in fact present in Ms. Woody's employment and the undisputed medical evidence that her work-related exposure to this abuse was the cause of her medical problems. There is no question that, in fact, Ms. Woody was not equally exposed to such abuse outside of her employment. Rutledge and multiple other decisions specifically have held that the test is not what might be present elsewhere but what was in fact present in the particular employment.
I would use a "but for" analysis. First, was the cause of the worker's inability to work mental problems triggered by an incident or incidents at work? But for the incidents, would the worker have been able to continue working? In an occupational disease analysis, was the worker exposed to an increased risk of triggering mental problems by something or someone in the work environment? Just because many people are stressed by supervisors at work does not remove the fact that such stresscan result in an inability to earn wages. When it does, it is compensable under workers' compensation.
Vivian Knight's claim arose from a single incident. The testimony of her treating physicians that she suffered a psychic trauma is undisputed. Such claims are generally compensable. See Larson. Multiple other cases have held such claims compensable, including Jordan, Cody,Davis, Withers, etc. The Workers' Compensation Act is required to be liberally construed in favor of the injured worker. The Supreme Court itself has held, "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." Adams v. AVX Corp., 349 N.C. 676, 508 S.E.2d 411, 414
(1998). An injury "arises out of" the employment when it is apparent to the rational mind upon consideration of all of the circumstances that there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. Robbins v.Nicholson, 281 N.C. 234, 188 S.E.2d 350 (1972). It is sufficient if the injury is one which, after the event, may be seen to have had its origin in the employment. Withers v. Black, 230 N.C. 428, 53 S.E.2d 668 (1949).
Vivian Knight was a long term employee who was working satisfactorily for years before the incident. As a direct result of the incident, she is undisputedly disabled. There is no evidence of an idiopathic cause.
This case is compensable.
This 28th day of June 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER