***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has shown good grounds to amend the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the parties.
3. Berkeley Insurance Company of the Carolinas was the carrier on the risk.
4. Plaintiff's average weekly wage was $684.12, which yields a compensation rate of $456.10.
5. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit #1: Medical Records.
b. Stipulated Exhibit #2: I.C. Forms and Filings.
c. Stipulated Exhibit #3: Plaintiff's Responses to Interrogatories.
d. Stipulated Exhibit #4: Recorded Statement.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing there from, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the Deputy Commissioner's hearing, plaintiff was a 41-year-old carpenter who performed work for defendants on a subcontract basis. Defendant-employer carried plaintiff as an employee on its workers' compensation insurance policy with defendant-carrier, making plaintiff an employee of defendants for purposes of the Workers' Compensation Act.
2. As a subcontracting carpenter, plaintiff performed various duties associated with new home construction, such as framing, roofing, vinyl siding installation, sheet rocking, and painting. During the course of his normal work duties, plaintiff was often required to ascend and descend ladders of different heights.
3. On April 19, 2002, plaintiff was making measurements and markings for a drop ceiling in a basement of a home under construction at a project site for defendants. To accomplish the task, plaintiff climbed and stood on a six-foot stepladder. While stepping back off the ladder, plaintiff hyperextended his left knee and tore his anterior cruciate ligament (ACL). When plaintiff put his left foot on the ground, he fell down on his right hip. Plaintiff could not say whether he missed the last rung of the ladder when he stepped down. Plaintiff attempted to use his wireless phone to call for help, but was unable to get service on his phone due to his location in the house. Plaintiff crawled out of the basement and used his wireless phone to call for help.
4. Plaintiff was taken to Forsyth Medical Center's emergency department where he received initial medical treatment for his left knee. Plaintiff was treated by Dr. Richard O'Keeffe, an orthopedic surgeon in Winston-Salem. Dr. O'Keeffe diagnosed plaintiff as suffering from a bucket-handle-type tear of the medial meniscus of the left knee with a displacement fragment into the intercondylar notch along with a torn ACL. Plaintiff did not have any significant problems with his left knee prior to the date of his injury. Dr. O'Keeffe rendered an opinion in a letter on June 4, 2002 that the mechanism of injury that plaintiff described to him of stepping off of a ladder, hyperextending his knee, feeling a pop, and suffering discomfort was consistent with the findings on the MRI scan. Dr. O'Keeffe recommended that plaintiff undergo arthroscopic surgery to repair both of the ligament tears. Plaintiff did not want to have both tears repaired at the same time. Plaintiff expressed a preference for undergoing surgery to repair the medial meniscus tear, which was the smaller of the two tears, rehabilitate his leg, and then return at a later date for reconstruction of the ACL if it remained symptomatic after conservative treatment.
5. On June 25, 2002, plaintiff underwent arthroscopic surgery performed by Dr. O'Keeffe to repair the medial meniscus tear. During the procedure, Dr. O'Keeffe noted that the ACL was completely torn. Dr. O'Keeffe debrided the ACL, but he did not attempt to reconstruct the ACL or repair the tear because of the limited purposes of the procedure being performed at that time. Plaintiff did not lose any time from work following the procedure.
6. Dr. O'Keeffe continued to treat plaintiff following the surgery, but plaintiff exhibited chronic ACL instability that did not respond to conservative treatment with medications and bracing. In September 2003, Dr. O'Keeffe recommended that plaintiff undergo arthroscopic reconstruction of the ACL. Dr. O'Keeffe stated that he would consider plaintiff to be totally disabled for the first week following the arthroscopic reconstruction of the ACL, but after the first week he would likely be of the opinion that plaintiff could perform a seated job if such a job were available. He would not consider releasing plaintiff for unrestricted work for at least five to six months. Dr. O'Keeffe assigned a 10% permanent partial impairment rating based on the ACL injury and the medial meniscectomy. Dr. O'Keefee stated that if the ACL surgery was performed, he would assign an additional five percent permanent partial impairment rating to the left leg.
7. At his deposition, Dr. O'Keeffe reviewed his letter of June 4, 2002 and affirmed his testimony regarding the etiology of the ACL tear and medial meniscus tear. Dr. O'Keeffe stated that it was not likely that plaintiff's ACL and meniscus tear were caused by plaintiff's impact with the floor. Furthermore, Dr. O'Keeffe stated that given plaintiff's size and weight, it was possible for the forces applied to plaintiff's knee when he stepped from a ladder in the normal and usual way to create an opportunity for hyperextension and the subsequent ACL and meniscal tear.
8. Plaintiff was performing duties for defendants at a time designated by his employer for the performance of work and at a house being constructed by defendants. Accordingly, plaintiff was in the course of his employment at the time of his injury.
9. The greater weight of the evidence does not establish that plaintiff sustained a compensable injury by accident. Plaintiff stepped from the ladder and tore his ACL and meniscus prior to his foot touching the ground and his falling on his right side. On April 19, 2002, plaintiff stepped off the ladder in his usual way, his knee buckled and he fell. Plaintiff did not slip, twist or fall from the ladder and there was nothing on the ladder that caused plaintiff to injure himself. There was no interruption in plaintiff's work routine and there was no unusual condition that caused the unexpected consequences.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 19, 2002, plaintiff did not sustain a compensable injury by accident while in the course of his employment. N.C. Gen. Stat. § 97-2(6).
2. The mere fact that plaintiff suffered an injury does not establish the fact of accident. Hensley v. Farmers Federal Co-Operative, 246 N.C. 274,98 S.E.2d 289 (1957). The injury and the accident are separate and there must be an accident that produces the injury before the employee can be awarded compensation. "Accident" is defined as an unlooked for and untoward event that is not expected or designed by the person who suffers the injury. The elements of "accident" are the interruption of the routine of work and the introduction of unusual conditions likely to result in unexpected consequences. Poe v. Acme Builders, 69 N.C. App. 147,316 S.E.2d 338, disc. review denied, 311 N.C. 762, 321 S.E.2d 143 (1984). If a fall and the resultant injury arise solely from an idiopathic cause, or a cause independent of the employment, the injury is not compensable. Where an employee suffers an injury in the ordinary course of his employment and the cause of the injury is not explained, but it is a natural and probable result of a risk thereof, an award will be sustained. Taylor v. Twin City Club, 260 N.C. 435, 132 S.E.2d 865 (1963).
3. In this case, plaintiff's injury occurred before he fell to the ground. The cause of plaintiff's fall was explained. The greater weight of the evidence indicates plaintiff hyperextended his knee and tore his ACL before his foot touched the ground and prior to his fall. Therefore, the fall did not cause plaintiff's injury. Plaintiff's injury was not a natural and probable result of descending a ladder. There was not an interruption in plaintiff's work routine and there was no evidence of any unusual condition that caused the unexpected consequences. Poe v. AcmeBuilders, supra.
 ***********
Based on the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be DENIED.
2. Each side shall bear its own costs.
This the 12th day of April 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER