* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor with minor modifications.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the alleged injury giving rise to this claim, an employment relationship existed between plaintiff-employee and defendant-employer.
3. At the time of the alleged injury, Zurich Insurance was the carrier on the risk for defendant-employer.
4. The Industrial Commission has jurisdiction of this matter.
5. Plaintiff's earning for 1999 would warrant the maximum compensation rate of $560.00.
6. Defendant-employer terminated plaintiff on April 4, 2001.
7. The parties stipulated to the following documents:
 (a) Medical Records including:
 (1) Medical Records of Cornerstone Internal Medicine;
 (2) Medical Records of Cornerstone Orthopaedics and Sports Medicine;
 (3) Physical Therapy Records of Dixon and Associates;
 (4) Medical Records of Johnson Neurologic Clinic;
 (5) Medical Records of Wake Forest University Baptist Medical Center Department of Neurosurgery; *Page 3 
 (6) Medical Records of Mackenzie Chiropractic Center;
 (7) Medical Records of Jeffrey Aita, D.C.;
 (b) Plaintiff's employment records with defendant-employer;
 (c) Plaintiff's record statement;
 (d) Industrial Commission Forms; and
 (e) Plaintiff's answers to defendants' first set of interrogatories
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Taylor, plaintiff was 47 years old and had worked as a territorial sales manager for defendant-employer for approximately three years, from March of 1998 until April of 2001. Plaintiff traveled to the Eden, Mount Airy, North Wilkesboro, Asheboro, and Hickory communities of North Carolina, solicited sales of telephone book advertisements, and designed the clients' telephone book advertisements for defendant-employer.
2. Prior to plaintiff's alleged injury which is the subject of this claim, plaintiff had shoulder complaints. On March 24, 1999, plaintiff presented to Dr. Wayne Herrick, of High Point Regional Health System Rehab Services, with complaints of severe left scapular pain. On July 1, 1999, plaintiff presented to Cornerstone Internal Medicine for medical treatment with Dr. William Joyce. Plaintiff's report of left scapula pain from "last winter" to Dr. Joyce is consistent with the history plaintiff provided to Dr. Herrick. *Page 4 
3. On November 17, 1999, plaintiff called Cornerstone Internal Medicine with complaints of back pain.
4. On November 23, 1999, plaintiff drove to Hickory to attend eight client meetings before the Thanksgiving holiday. Plaintiff checked into the Comfort Suites in Hickory. Plaintiff testified that due to construction, she had to park at the back of the building instead of parking in front of her room as usual. After plaintiff parked, she carried a banker's box to her room, which was a farther than normal distance
5. Plaintiff testified that she removed the box from her car and walked approximately half of the distance from her car to her room. Plaintiff then set the box down and did not experience any left shoulder pain either upon lifting or setting the box down. Plaintiff again lifted the box, without pain, and completed the journey to her room. Plaintiff testified that she set the box down either on a chair or the bed, and felt pain only after she set the box down. Plaintiff never lifted the banker's box over her head. The banker's box also did not jerk out of her hands when she set the box down in the hotel room.
6. Plaintiff was unable to testify as to the approximate weight of the banker's box, but described it as heavy as it contained telephone books of the communities in her territory, as well as file folders.
7. Plaintiff regularly lifted and set the box down as a normal part of her job. In fact, plaintiff testified, "I didn't overload it or do anything different than I normally had."
8. On November 24, 1999, plaintiff returned to Cornerstone Internal Medicine with complaints of lower back and left shoulder blade pain. Plaintiff informed the nurse that her lower back and left shoulder blade pain began one week prior to the office visit and had gotten *Page 5 
progressively worse. Dr. Peter M. Schoch determined that plaintiff suffered from severe low back pain, but did not make any findings that plaintiff suffered from left scapular pain.
9. On November 29, 1999, plaintiff treated with Dr. Gordon B. Arnold, an internal medicine specialist. Plaintiff complained of increased left shoulder pain and reported pain going down the left arm and weakness to the point of dropping things. Plaintiff made no mention of a work-related injury to the left shoulder to Dr. Arnold.
9. On November 30, 1999, plaintiff participated in a ride-along with a corporate employee, and plaintiff did not mention to the corporate employee that she had been injured on the job.
10. On April 14, 2000, plaintiff returned to Dr. Arnold for a left shoulder evaluation. Dr. Arnold noted that the left shoulder itself is not a problem. Plaintiff did not mention a work-related injury to her left shoulder at this appointment.
11. On January 2, 2001, plaintiff returned to Dr. Arnold with complaints of left sub-scapular pain. For the first time, plaintiff informed one of her treating physicians that the mechanism of her left scapula injury was the result of lifting a heavy suitcase full of catalogs.
12. Dr. Arnold was of the opinion that if plaintiff put the banker's box down and felt immediate pain, then the setting down of the box very likely caused plaintiff's left shoulder injury; a rotator cuff tear or scapular tear is caused by lifting or pulling; and, overhead activity, such as pitching or throwing a ball, does not cause rotator cuff injuries. Dr. Arnold was unaware of the cause of plaintiff's left shoulder or scapular pain in February of 1999. Dr. Arnold's medical opinion with regard to the cause of plaintiff's left shoulder condition was based on plaintiff's report of a left shoulder injury on November 23, 1999 and does not take into account plaintiff's prior report of left shoulder pain on July 1, 1999. *Page 6 
13. On February 12, 2001, defendant-employer placed plaintiff on probation because plaintiff incurred numerous citations due to her failure to respond to electronic mail and telephone calls from her supervisors with defendant-employer. Defendant-employer received out-of-work notes from plaintiff dated March 20, 2001 and March 28, 2001. Defendant-employer did not receive any other out-of-work notes from plaintiff.
14. On March 9, 2001, plaintiff presented to Dr. Mark A. Burt, an expert in orthopaedic surgery, for a consultation at the request of Dr. Arnold. Dr. Burt recommended physical therapy and various prescription treatments.
15. On April 4, 2001, defendant-employer, due to plaintiff's substandard work habits, terminated plaintiff.
16. On April 5, 2001, plaintiff presented for an MRI, which revealed a tear involving the posterior-superior labrum. On April 24, 2001, plaintiff returned to Dr. Burt, and he diagnosed a possible left shoulder SLAP (superior labral anterior posterior) lesion. On March 22, 2002, Dr. Burt was of the opinion that plaintiff suffered from left shoulder impingement syndrome with a possible SLAP lesion.
17. Dr. Burt testified that a SLAP lesion is typically caused by overhead activities, such as an overhead throwing, a fall on an outstretched arm or compression on the shoulder. A SLAP lesion can also be caused by a sudden, downward pull in the arm. However, the most common cause of a SLAP lesion is a fall on an outstretched arm. Dr. Burt was not certain that plaintiff's alleged injury caused her SLAP lesion or impingement. Dr. Burt was of the opinion that the relevant point with regard to causation of plaintiff's left shoulder injury would be when the box was picked up. However, plaintiff's testimony was that her shoulder pain began when she put the box down. *Page 7 
18. On August 4, 2004, plaintiff first treated with Dr. Vincent E. Paul. Plaintiff reported to Dr. Paul that she had sustained a rotator cuff tear in 1991, but no surgery was performed. Dr. Paul's office note also references that plaintiff lifted and carried a box of files in a hotel room for her job, and that she "did it again on Sunday the 1st."
19. On August 31, 2004, Dr. Paul performed arthroscopic surgery on plaintiff's left shoulder. The surgery revealed impingement syndrome, partial thickness rotator cuff tear, arthritic acromion clavicular joint and acromion bursitis.
20. In his deposition testimony, Dr. Paul declined to relate plaintiff's alleged work injury of November 23, 1999 to the shoulder problems for which he provided treatment in 2004. In particular, Dr. Paul testified that plaintiff's bursitis was not caused by the alleged incident; and, although it is possible that the partial thickness tear could be related to the incident, it is not a likely scenario. The testimony of Dr. Paul, taken as a whole, fails to establish a causal connection between plaintiff's alleged incident of November 23, 1999 and her current shoulder condition.
21. The greater weight of the evidence establishes that there was no interruption of plaintiff's regular work routine on November 23, 1999.
22. Further, the greater weight of the medical evidence establishes that, even if an accident occurred, plaintiff's shoulder condition is not causally related to the alleged incident on November 23, 1999.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 8 
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident, arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v. A.C.Lawrence Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950).
3. Plaintiff failed to prove that the alleged injury was caused by an unlooked for or untoward event or a fortuitous cause; or that she was injured under circumstances involving the interruption of the normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Poe v. Acme Builders,69 N.C. App. 147, 149, 316 S.E.2d 338, 340, disc.review denied,311 N.C. 762, 321 S.E.2d 143 (1984); Hensley v. Farmers Fed'n Coop.,246 N.C. 274, 280, 98 S.E.2d 289,293 (1957); Turner v. Burke Hosiery Mill,251 N.C. 325, 326,111 S.E.2d 185, 186 (1959); Trudell v. Seven Lakes Heating AirConditioning Co., 55 N.C. App. 89, 90, 284 S.E.2d 538, 540 (1981);Harding v. Thomas Howard Co. 256 N.C. 427, 124 S.E.2d 109 (1962).
4. Even if plaintiff had proven that she suffered an injury by accident, which she failed to do, plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the alleged work-related accident and the disability for which compensation is sought. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1962).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following: *Page 9 
 AWARD
1. Plaintiff's claim for workers' compensation benefits must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This the __ day of April 2007.
 S/_____________ BERNADINE S. BALLANCE, COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS, COMMISSIONER
S/_____________ CHRISTOPHER SCOTT, COMMISSIONER *Page 1