***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Vilas, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Vilas, with modifications.
 ***********
The following were entered into evidence at the hearing before the Deputy Commissioner as:
 EXHIBITS a. The parties Pre-Trial Agreement marked as Stipulated Exhibit 1. *Page 2 
 b. A compilation of records paginated as 1 — 354 containing Industrial Commission Forms, Medical Records, Discovery and Employee File marked as Stipulated Exhibit 2.
 c. Documents regarding Short Term Disability Insurance marked as Defendants' exhibit 1.
 d. Documents regarding Long Term Disability Insurance marked as Defendants' exhibit 2.
 e. Documents concerning disability payments to Plaintiff marked as Defendants' exhibit 3.
The following were entered into evidence subsequent to the hearing before the Deputy Commissioner:
 a. A cover letter dated December 17, 2009 and three (3) pages of medical records from the office of Dr. David M. Seales, Northwest Neurology marked as stipulated exhibit number 3.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The date of the injury subject to this claim is July 17, 2009.
2. On such date, the parties were subject to and bound by the provisions in the North Carolina Workers' Compensation Act.
3. On such date, an employer-employee relationship existed between Plaintiff and Defendant-Employer. *Page 3 
4. On such date, Defendant-Employer employed three or more employees.
5. Defendant-Employer is self-insured with Sedgwick CMS acting as Third Party Administrator. Defendant-Employer was formally administrated by Specialty Risk Services, Inc.
6. Plaintiff's average weekly wage is to be determined by an Industrial Commission Form 22 wage chart submitted at the hearing before the Deputy Commissioner.
7. Defendants denied Plaintiff's claim.
 *********** ISSUES PRESENTED
1. Did Plaintiff sustain a compensable injury by accident to his left foot/ankle, arising out of and in the course of his employment pursuant to N.C. Gen. Stat. § 97-2(6) on July 17, 2009?
2. If Plaintiff did sustain a compensable injury by accident, then to what
benefits is Plaintiff entitled to receive under the North Carolina Worker's Compensation Act?
3. If Plaintiff is awarded benefits under the North Carolina Worker's Compensation Act, are Defendants entitled to a credit or offset for Short Term Disability and/or Long Term Disability benefits Plaintiff has received pursuant to N.C. Gen. Stat. § 97-42?
4. If Plaintiff did sustain a compensable injury by accident, then who should be designated as Plaintiff's treating physician in regards to his July 17, 2009 injury?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 29 years of age with a date of birth was April 24, 1981.
2. Plaintiff is a high school graduate, and his prior work history includes work in restaurants, factory work in the furniture industry, and work in a propane plant.
3. Plaintiff began working for Defendant-Employer in August 2004 at the Lowe's Distribution Center in Statesville, North Carolina in the Shipping Department and then in the Utility Department.
4. Plaintiff's job duties in the Utility Department involved keeping trash and pallets out of the way of other team members to speed up production, keeping trays off of the shipping dock, sorting and stacking pallets, and other duties which Plaintiff described as "help jobs".
5. Plaintiff used a "walkie rider," a stand-up motorized pallet jack, to pick up empty plastic trays placed in front of the warehouse bay doors. When he operated the "walkie", Plaintiff stood in a sideways position, and he used his left foot to step down from the machine, a 10-inch distance. Plaintiff operated the "walkie" approximately once or twice per week to go back and forth picking up trays between the 150 doors of the loading terminal in the distribution center. This was a fast-paced activity requiring him to step on and off the machine platform many times. Plaintiff was certified by Lowe's to use the motorized pallet jack.
6. Plaintiff's pay rate at the time of the injury was $13.75 per hour, plus a shift differential of 11.11% of his hourly rate. Plaintiff worked 36 hours per week plus the shift differential per Plaintiff's testimony.
7. On July 17, 2009, Plaintiff was working in the Utilities Department of Defendant-Employer, using a motorized pallet jack or "walkie" to go to each bay door, load trays, and take them to another location. At approximately 2:00 p.m., as he was stopping the machine at a bay, *Page 5 
Plaintiff stepped down off the platform with his left foot and either stepped onto the side of his foot or rolled his ankle as his foot landed on the concrete followed by a stumble and a step or two to regain his balance. With this misstep, Plaintiff felt a popping and burning sensation and an immediate onset of pain.
8. Plaintiff alleges he sustained a compensable injury by accident to his left foot/ankle on July 17, 2009. When Plaintiff suffered this injury, he was engaged in his normal job functions in the normal way, except that Plaintiff testified that he normally stepped down with a flat foot onto the floor and not onto the side of his foot. Plaintiff testified that this step was not the way he stepped every other time when he came down on side of his foot instead of coming down flat on his foot as normal. In response to questioning from defense counsel regarding whether Plaintiff was operating the "walkie" the same way he did on every other occasion, Plaintiff testified "[w]ell, no, because this time I turned my foot over and got hurt. So, no, it definitely wasn't the way I had done it every other time".
9. On cross-examination by defense counsel, Plaintiff testified that he did not remember if there was any object on the floor or anything different about the surface he stepped on to. When later asked on cross-examination if "Today, would you say that there was anything unusual about the ground?" Plaintiff responded, "I guess I would say no".
10. The accident and investigation reports, completed the Sunday after the injury, show that Plaintiff stepped off the "walkie" and experienced sharp pain in his left foot and ankle. Plaintiff testified that he informed his supervisor, Hasina Cooper, that he misstepped when he was stepping off of the motorized pallet jack and injured his foot. Plaintiff further testified that he demonstrated how the accident occurred, so that Ms. Cooper and her supervisor would understand what occurred. *Page 6 
11. At the hearing before the Deputy Commissioner, Plaintiff reviewed the Defendant-Employer's written report of his injury and testified that it did not contain everything he reported to the employer regarding his accident on July 17, 2009. Specifically, it did not include that he had "turned his foot over".
12. In addition, Plaintiff provided a written report of his injury after Plaintiff had conversations with his employer. Plaintiff testified that he was confused when preparing a written statement and had to ask his supervisor "how do I do this and make it right," "you know, because I really — as you can see looking at it, I'm not very literate anyway. And I guess, I just thought it was good enough, cause, you know, they said so". Plaintiff testified that the written report he prepared was also missing the fact that he turned his foot when he stepped off the motorized pallet jack.
13. Plaintiff gave a recorded statement to the insurance adjuster after he had been informed that his claim was denied, in which he stated that he rolled his ankle. Thereafter, the insurance adjuster asked Plaintiff if anything unusual happened to which he replied "no". Plaintiff testified that at the time that he gave the recorded statement that he understood "unusual" to mean that he was "horseplaying or something of that nature" or doing something he was not supposed to do. Plaintiff did testify that he believed that a misstep was unusual.
14. Plaintiff's working conditions on July 17, 2009, were the same as usual as they had always been. Plaintiff did not step onto any object or material when he stepped off the "walkie". The greater weight of evidence shows, and the Full Commission finds, there were no unusual or unexpected conditions or circumstances introduced into Plaintiff's normal work routine when he sustained his injuries. *Page 7 
15. Plaintiff initially received medical treatment at Davis Regional Medical Center on July 26, 2009, at which time the medical records reflect that Plaintiff reported that he was injured by stepping down and twisting his foot at work approximately a week prior.
16. On July 28, 2009, Plaintiff presented to Dr. Walter J. Falardeau III, of Salem Foot Care. Plaintiff described that he had stepped down off of a piece of machinery at work when he had sharp pain in the arch of his foot and developed swelling in the medial aspect of the left foot. Dr. Falardeau initially thought Plaintiff may have a strain or inflammation of the tibialis posterior tendon, on the inside aspect of Plaintiff's left foot. Plaintiff was given a note for light duty work for seven days.
17. Plaintiff reported that Defendant-Employer did not provide light duty work and that he tried to work his regular duty position, but it exacerbated his condition. Dr. Falardeau provided Plaintiff with a synthetic weight-bearing cast on August 10, 2009, and wrote him out of work, noting in the medical records that regular duty exacerbated Plaintiff's foot condition.
18. Conservative treatment measures continued for Plaintiff's injury; however weight bearing caused pain in Plaintiff's left foot. On December 17, 2009, Dr. Falardeau referred Plaintiff to Dr. David Seales to rule out tarsal tunnel syndrome, prior to a decision on surgical options. Plaintiff reported to Dr. Seales that he was operating a fork lift device and "stumbled on his left foot." Dr. Seales noted that Plaintiff's ankle rolled in this incident.
19. Plaintiff underwent surgery February 1, 2010, for a gastrocnemius recession, Evan's calcaneal osteotomy, Cotton osteotomy of the medial cuneiform bone, Kidner advancement of the tibialis posterior tendon, and transfer onlay graft of the flexor digitorum longus tendon of the left foot. *Page 8 
20. During surgery, Dr. Falardeau observed that Plaintiff's tendon was damaged and stretched with a partial tear to his tibialis posterior tendon. Dr. Falardeau opined the damage to Plaintiff's tendon was consistent with a trauma to the tendon, and a complete tear of the tendon would be very unusual.
21. Plaintiff remained completely non-weight bearing post surgery until March 8, 2010, with increased weight-bearing on March 22, 2010. By April 5, 2010, Plaintiff's foot continued to swell and ache with prolonged standing.
22. On June 8, 2010, Dr. Falardeau noted that he felt Plaintiff had plateaued although he testified that he hoped Plaintiff would continue to improve over time. Plaintiff was able to walk and stand on soft surfaces such as a lawn for longer periods, but was only able to walk on hard surfaces such as concrete for approximatel/y 30 to 45 minutes.
23. In his deposition, Dr. Falardeau did not state that Plaintiff had reached maximum medical improvement, but would expect him to be able to return to work in some capacity in the future with limitations likely being related to standing. Dr. Falardeau testified that he would assess Plaintiff's functional abilities upon his maximum recovery. He also indicated that Plaintiff might benefit from a double upright brace.
24. Dr. Falardeau opined he would not expect a person to sustain the injury Plaintiff sustained by simply stepping off a piece of equipment, and he confirmed that Plaintiff's description of his injury where he misstepped when exiting a piece of equipment and rolled his ankle, is consistent with the type of injury Plaintiff sustained, which necessitated the surgery that Dr. Falardeau performed for Plaintiff.
25. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's testimony was credible as to a misstep and to stepping onto the side of his foot/ankle. *Page 9 
This evidence is supported by the initial medical record from Davis Regional Medical Center from July 26, 2009, Plaintiff's recorded statement of July 28, 2009, and Dr. David Seales' medical record of December 17, 2009, as well as with the credible medical testimony of Dr. Falardeau that Plaintiff's foot and ankle condition is causally related to his July 17, 2009 injury.
26. Although Plaintiff sustained an injury while working for Defendant-Employer on July 17, 2009, this injury was not the result of an accident as defined by the North Carolina Workers' Compensation Act. The greater weight of the credible evidence of record does not support a finding that Plaintiff suffered a compensable injury by accident arising out of and in the course of his employment with Defendant on July 17, 2009.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, Plaintiff has the burden of proving every element of compensability. As part of this burden, Plaintiff must present convincing evidence establishing these elements. Whitfield v. Lab Corp. of Amer., 158 N.C. App. 341,350 (2003); Harvey v. Raleigh PoliceDepartment, 96 N.C. App. 28, disc. rev. denied,325 N.C. 706 (1989); Gaddy v. Kern, 680, 683 cert.denied 283 N.C. 585 (1973).
2. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an "accident" as defined in the statute. N.C. Gen. Stat. § 97-2(6); Cody v. Snider LumberCo., 328 N.C. 67, 70, 399 S.E.2d 104, 106 (1991). *Page 10 
3. Our courts have explained that there must be an interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. Adams v.Burlington Indus. Inc., 61 N.C. App. 258 260 (1983).
 Our Supreme Court has defined the term "accident" as used in the Workers' Compensation Act as "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." Hensley v. Farmers Federal Co-Operative, 246 N.C. 274, 278, 98 S.E.2d 289, 292 (1957); accord, Rhinehart v. Market, 271 N.C. 586, 157 S.E.2d 1 (1967). The elements of an "accident" are the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. [Citations omitted].
Adams, 61 N.C. App. 258 260 (1983) quoting Porter v. ShelbyKnit, Inc., 46 N.C. App. 22,26 (1980).
4. The North Carolina Court of Appeals in Searsey explains that:
 An `accident' is not established by the mere fact of injury but is to be considered as a separate event preceding and causing the injury. [Citations omitted] No matter how great the injury, if it is caused by an event that involves both an employee's normal work routine and normal working conditions it will not be considered to have been caused by accident.
Searsey v. Perry M. Alexander Construction Co.,35 N.C. App. 78, 79-80 (1978).
5. The mere act of stepping, even if it results in a misstep that causes an injury, is not an unusual event if normally a part of one's work routine. Gray v. RDU AirportAuthority, ___ N.C. App. ___, 692 S.E.2d 170 (2010);Butner v. Piedmont Triad Homes,177 N.C. App. 462, 628 S.E.2d 867 (2006); Gunter v. DaycoCorp., 317 N.C. 670, 346 S.E.2d 395 (1986). Stepping off of the "walkie" with his left foot was not an unusual event for Plaintiff as his testimony was that he had done this activity one to two days per week, multiple times on those days for the duration of time that he had worked in the Utility Department for Defendant-Employer. There was no evidence presented of any unusual condition on the concrete surface onto which Plaintiff *Page 11 
stepped. There was no evidence of an unusual or unforeseen event or circumstance that caused Plaintiff to step onto the side of his foot.
6. On July 17, 2009, Plaintiff was performing his usual duties in the usual way. Plaintiff experienced no unlooked for or untoward event, no interruption of the work routine, and no introduction of any unusual conditions likely to result in unexpected consequences. Therefore, Plaintiff did not sustain a compensable injury by accident. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act is DENIED.
2. Each side shall bear its own costs.
This the 21st day of July, 2011.
 S/_________________
 CHRISTOPHER SCOTT
 COMMISSIONER
CONCURRING:
S/_________________ STACI T. MEYER COMMISSIONER *Page 12 
S/____________________ DANNY L. McDONALD COMMISSIONER *Page 1