***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial *Page 2 
Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff-employee and defendant-employer, Schenker Logistics, Inc. and American Casualty Company was the compensation carrier on the risk on the date of alleged injury.
5. Plaintiff alleges that he sustained an injury to his right shoulder on April 1, 2010.
6. Plaintiff's average weekly wage was $527.78, which generates a compensation rate of $351.85.
7. In addition to the Pre-Trial Agreement, which was marked and received as Stipulated Exhibit (1), the parties submitted the following:
 a. A Notebook of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2), and which included the following:
 i. Industrial Commission Forms and Filings;
 ii. A Transcript of Plaintiff's Recorded Statement;
 iii. A Job Description and;
 iv. Medical Records.
 b. Plaintiff's Employment File, which was admitted into the record and marked as Stipulated Exhibit (3).
 ***********
Based upon the competent evidence adduced from the record, the Full Commission *Page 3 
makes the following additional:
 FINDINGS OF FACT
1. Plaintiff, who is forty-six years old, was first employed by defendant-employer on September 8, 2008. Plaintiff initially worked in a roller racks position, and later moved into fork-truck stocker position. As a stocker, plaintiff's duties included being responsible for stocking full and partial pallets in what were referred to as "case pick" and "layer pick" areas. Plaintiff was also required to perform tasks referred to as "letdowns" and "replenishes" as part of his job.
2. To perform the tasks associated with his replenishing duties, plaintiff mechanically removed an empty pallet with a forklift, and then placed a full pallet in its prior location. To perform the tasks associated with his letdown duties, plaintiff removed a partially stocked pallet from its location, placed a full pallet in that location, and then manually moved boxes of products from the partially full pallet onto the full pallet. More specifically, while performing his letdown duties, plaintiff lifted products from the partially full pallet at chest and shoulder level, and then placed the products on the full pallet.
3. Plaintiff performed approximately 80 to 100 "letdowns" per night and in doing so manually moved between 100 to 150 boxes per night.
4. The palletized products that plaintiff worked with while performing his duties consisted of various items including, but not limited to, boxes of soap and mouthwash weighing approximately 15 pounds, boxes of feminine hygiene products, weighing approximately 5 pounds, and boxes of razors, weighing approximately 3 pounds.
5. Plaintiff testified that on April 1, 2010, he was manually transferring boxes onto a pallet that was raised on a forklift approximately 4 feet from the ground. Plaintiff further *Page 4 
testified that while performing this task, he experienced the development of pain in his right-shoulder.
6. Plaintiff's symptoms were reported to defendant-employer and an incident report was completed which reflects that plaintiff's right shoulder became sore while lifting and moving boxes from one pallet to another.
7. Plaintiff did not have any right shoulder injuries or right shoulder symptoms prior to April 1, 2010.
8. Plaintiff's supervisor, Mr. Rodney Lewis, testified that plaintiff's primary duty for defendant-employer involved driving a fork-lift truck for approximately 10 hours out of a 12 hour shift.
9. Mr. Lewis further testified that prior to April 1, 2010, plaintiff's job performance had been less than satisfactory and that on that date, a new accountability model was implemented for all stockers. Mr. Lewis opined that plaintiff's report of allegedly having sustained an injury was an effort to avoid disciplinary action related to his failure to meet the new production standards.
10. The testimony of Mr. John Pilkington, defendant-employer's operations manager, corroborated that of Mr. Lewis. Mr. Pilkington testified that stockers perform tasks associated with their letdown duties for approximately 30 percent of a shift.
11. Plaintiff continued to work for defendant-employer after April 1, 2010. However, over time his symptoms worsened such that he completed a second incident report on April 8, 2010, on which he noted that he continued to experience right shoulder pain.
12. On April 9, 2010, plaintiff sought medical treatment for his ongoing right shoulder pain at Greensboro Adult Adolescent Internal Medicine. Medical records from that *Page 5 
date reflect that plaintiff reported his symptoms to have developed while transferring cases from one pallet to another. This early medical record is corroborative of plaintiff's testimony regarding what occurred on April 1, 2010 and his symptoms. These records further note that after experiencing his initial symptoms, plaintiff had three scheduled days off from work, during which time he experienced some improvement, but that upon returning to work his right shoulder symptoms returned and worsened.
13. Following his initial examination, plaintiff was diagnosed as having a right scapular shoulder strain, prescribed medication and was medically excused from work through April 13, 2010.
14. On April 14, 2010, plaintiff returned to work for defendant-employer. However, within a day his right shoulder symptoms returned. Based upon this development, plaintiff was sent home by defendant-employer on April 15, 2010. Thereafter, plaintiff was referred for an orthopedic evaluation.
15. On May 6, 2010, plaintiff was examined by Mr. Brad Dixon, PA-C, at the Greensboro Orthopaedic Center. The office note from this visit indicates that Plaintiff gave a history of having injured his shoulder at work while "lifting some heavy boxes above his head." Following an examination, plaintiff was diagnosed as having a rhomboid strain of the right shoulder, for which medication, moist heat and activity modification to include the avoidance of overhead activity was recommended.
16. Thereafter, plaintiff continued working in his position as a stocker for defendant-employer, while also continuing to experience pain and physical limitations with his right shoulder.
17. On June 9, 2010, plaintiff returned to Greensboro Adult Adolescent Internal *Page 6 
Medicine. Records from that date reflect that plaintiff reported continuing to experience significant right shoulder pain. On October 22, 2010, with his symptoms continuing, plaintiff was referred for a right shoulder MRI.
18. On November 5, 2010, plaintiff was referred to Dr. Peter Dalldorf at Guilford Orthopaedic and Sports Medicine. During this initial examination, plaintiff described the onset of his right shoulder symptoms and his work duties for defendant-employer. Following the examination, Dr. Dalldorf diagnosed plaintiff as having right shoulder impingement syndrome, for which he recommended a conditioning program and injections.
19. Plaintiff has also been diagnosed as having a Type II or III acromion or hook and an os acromiale, both known to be risk factors for the development of shoulder impingement syndrome. Dr. Dalldorf testified that these conditions are genetic in origin.
20. Dr. Dalldorf has opined to a reasonable degree of medical certainty that plaintiff's employment with defendant-employer contributed to the development of his right-shoulder impingement syndrome. Additionally, Dr. Dalldorf opined to a reasonable degree of medical certainty that plaintiff's employment with defendant-employer placed him at an increased risk for the development of a shoulder impingement syndrome, to the extent that it involved repetitive lifting at chest level or above. The Full Commission places greater weight on Dr. Dalldorf's opinion.
21. Dr. James Applington, an orthopaedic surgeon, reviewed plaintiff's case and the medical records of Dr. Dalldorf. Dr. Aplington opined that plaintiff has right shoulder impingement syndrome. Additionally, as with Dr. Dalldorf, Dr. Applington found that plaintiff had a Type II acromion or hook and an os acromiale, which can contribute to the development of an impingement syndrome. *Page 7 
22. Both Dr. Dalldorf and Dr. Applington testified that individuals can have the Type II acromion and an os acromiale condition without any resultant impingement produced in the shoulder. Both of these physicians also testified that the primary factor for causing an impingement is the activity and motion of the shoulder, particularly with overhead use or shoulder and chest level use of the arms with repetition.
23. However, contrary to Dr. Dalldorf, Dr. Applington opined that the general public was equally exposed to the risk of developing shoulder impingement syndrome as plaintiff was through his employment with defendant-employer.
24. To be compensable, an injury must be the result of an "accident" as that term is defined under the Act. An "accident" is a separate event preceding and causing the injury. The mere fact that an injury occurred or was sustained does not establish that an "accident" occurred. An accident involves an interruption of an employee's normal work routine with the introduction thereby of unusual conditions likely to result in unexpected consequences.
25. The right shoulder pain plaintiff experienced on April 1, 2010 was not the result of an interruption of his regular work routine and the introduction thereby of unusual circumstances likely to result in unexpected consequences. Plaintiff was performing his regular job in a normal fashion when he experienced the onset of the right shoulder pain.
26. Plaintiff's job duties as a stocker for defendant-employer involved repetitive use of his arms for lifting at chest or shoulder level.
27. Plaintiff's employment with defendant-employer was a significant contributing factor to his development of right shoulder impingement syndrome. Because Plaintiff's employment required that he use his arms repetitively at chest or shoulder level, it placed him at an increased risk of developing right shoulder impingement syndrome as compared to members *Page 8 
of the general public not so employed.
28. As a result of the right shoulder impingement syndrome, plaintiff was out of work from April 9, 2010 to April 14, 2010, and again from April 16, 2010 to May 12, 2010, when he returned to full duty work. At the time of hearing, plaintiff continued to work for defendant-employer in the stocker position, earning the same wages he was earning at the time of the injury.
29. Plaintiff has not yet reached maximum medical improvement.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, a claimant has the burden of proving every element of compensability. Whitfield v. Lab Corp. ofAmer., 158 N.C. App. 341, 581 S.E.2d 778, (2003); Harvey v. RaleighPolice Department, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied, 325 N.C. 706, 388 S.E.2d 454 (1989).
2. To be compensable under the Act, an injury "must result from an accident, which is considered as a separate event preceding and causing the injury; the mere fact of injury does not of itself establish the fact of accident." Bigelow v. Tire Sales Co.,12 N.C. App. 220, 182 S.E. 856 (1971). There must be an accident, followed by an injury by such accident which results in harm to the claimant before the claimant may be compensated. Jackson v. NorthCarolina State Highway Commission,272 N.C. App. 697, 158, S.E. 2d 865 (1968). Our Supreme Court has defined the term "accident" as used in the Workers' Compensation Act as "an unlooked for and untoward event which is not expected or designed by the person who *Page 9 
suffers the injury." Hensley v. Cooperative,246 N.C. 274, 98 S.E. 2d 289 (1957); accord, Rhinehart v. Market,271 N.C. 586, 157 S.E. 2d 1 (1967). An unlooked for and untoward eventtherefore involves the interruption of the work routine and the introduction of thereby "unusual conditions likely to result in unexpected consequences." Poe v. Acme Blders,69 N.C. App. 147, 316 S.E.2d 338, cert. denied,311 N.C. 762, 321 S.E.2d 143 (1984).
3. On April 1, 2010, plaintiff did not sustain an injury by accident arising out of or in the course of his employment with defendant-employer involving his right shoulder. N.C. Gen. Stat. § 97-2(6); Poe v. Acme Blders,69 N.C. App. 147, 316 S.E.2d 338, cert. denied,311 N.C. 762, 321 S.E.2d 143 (1984).
4. In order to prove a compensable occupational disease, the claimant must establish both causation and increased risk. Rutledge v.Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). Increased risk is proved by showing: (1) that the disease is "characteristic of" and "peculiar to" individuals engaged in the claimant's particular trade or occupation; and (2) that their disease is not one to which the general public is equally exposed. Booker v. Duke Med. Ctr.,297 N.C. 458, 256 S.E.2d 189 (1979). "A disease is `characteristic' of a profession when there is a "recognizable link" between the nature of the job and an increased risk of contracting the disease in question."Id. at 472. A disease is "peculiar to the occupation" when the conditions of the employment result in a hazard which distinguishes it in character from employment generally. Id. at 473.
5. North Carolina law requires that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 532 S.E.2d 207 (2000) *Page 10 
(quoting Click v. Pilot Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980)). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link." Holley v.ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000). Medical testimony that relies on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v. Hickory Bus. Furn.,353 N.C. 277, 538 S.E.2d 912 (2000); Seay v. Wal-Mart Stores,Inc., 180 N.C. App. 432, 637 SE2d 299 (2006).
6. Based upon a preponderance of the credible evidence of record, the undersigned conclude that plaintiff's employment with defendant-employer caused or significantly contributed to the development of his right shoulder impingement syndrome. N.C. Gen. Stat. § 97-53(13);Booker v. Duke Med. Ctr., 297 N.C. 458, 256 S.E.2d 189, (1979);Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983);Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E. 2d 389 (1980); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000). Additionally, plaintiff's employment with defendant-employer exposed him to an increased risk of developing this condition as compared to members of the general public not so employed. Id.
7. As a result of his compensable occupational disease, plaintiff was totally disabled from April 9, 2010 to April 14, 2010 and again from April 16, 2010 to May 12, 2010. N.C. Gen. Stat. § 97-29.
8. As the result of his compensable occupational disease, right shoulder impingement syndrome, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred when the medical bills have been approved according to *Page 11 
established Industrial Commission procedures. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits at the rate of $351.85 per week for the period from April 9, 2010 to April 14, 2010, and from April 16, 2010 to May 12, 2010. This compensation has accrued and shall be paid to plaintiff in a lump sum, subject to the attorney fee hereinafter approved for plaintiff's counsel.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his compensable occupational disease, right shoulder impingement syndrome when the medical bills have been approved according to established Industrial Commission procedures.
3. An attorney fee of 25 percent of the compensation awarded in paragraph 1 is hereby approved for plaintiff's counsel and shall be paid by deducting that amount from the lump sum due plaintiff and forwarding it directly to plaintiff's counsel.
This the ___ day of November, 2011.
 S/______________ TAMMY R. NANCE COMMISSIONER
CONCURRING: *Page 12 
 S/_______________ LINDA CHEATHAM COMMISSIONER
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
 *Page 1